THE HANOVER FIRE INSURANCE COMPANY OF THE CITY OF NEW YORK *vs.* ALEXANDER BROWN & SONS.

*Fire Insurance — Conditions of Policy — Foreclosure sale — Contribution between Insurers — Evidence — Pleading.*

A provision in a policy of insurance that the same shall become void immediately upon the passing or entry of a decree of foreclosure, is not violated by an advertisement and sale of the insured property under a power contained in a mortgage, for if the foreclosure sale could be considered as equivalent to a sale under a decree of a Court of equity, such sale does not pass the title, until it is ratified and confirmed by the Court.

Nor is the condition in the policy that the same shall be void if there be a sale of the insured property under a deed of trust, or any change in the title or possession of the property, violated by such advertisement and sale, since it is necessary that the sale made by the attorney in the mortgage shall be reported to a Court of equity, and when it is reported the same proceedings are required as if it had been by a trustee under a decree, and till such proceedings are had the title of the insured has not come to an end.

Where there are sundry policies of insurance, each contracting to pay the proportion of the loss which the amount insured by it bears to the whole sum insured on the property in all the policies, the contracts are entirely separate and independent of each other, and each insurer binds itself to pay its own proportion of the loss, without reference to what may be paid by the others, and there is no contribution between them.

Suit was brought on a policy of insurance containing the foregoing stipulation. The defendant pleaded that the plaintiffs had been fully indemnified and paid by other insurers for all loss and damages alleged to have been sustained by them by reason of the fire. There was no reference either in the declaration or in the plea to the stipulation contained in the policy. The replication did not aver that the other insurers had paid more than

Hanover Fire Ins. Co. *vs.* Brown.

their ratable portion of the loss, but averred a compromise with them, and an acceptance of a smaller sum than the amount claimed by the plaintiffs, and an assignment to the plaintiffs of their claim against the defendant for contribution. HELD:

That the admission of evidence of such assignment was improper, as the pleadings showed that the other insurers had no right of contribution against the defendant.

Where the declaration in the cause is on a policy of insurance, and avers a direct liability to the plaintiffs on the contract contained in the policy, and the replication brings forward a new and distinct cause of action, founded on several assignments of claims for contribution alleged to be due to other insurance companies, the replication is bad on demurrer.

Replications which refer to documents that did not appear in any previous pleading, and pray that they may be considered as parts of the replications, are bad on demurrer, as it is inadmissible by reference to incorporate into a pleading the contents of a paper which is not produced.

APPEAL from the Court of Common Pleas.

Alexander Brown and Sons brought an action against the Hanover Fire Insurance Company on a policy of insurance. The defendant pleaded three pleas as follows: "It says for a first plea that in and by said policy of insurance in the declaration mentioned, it is among other things provided that said policy should become void and of no effect immediately upon the passing or entry of a decree of foreclosure or upon a sale under a deed of trust, or levy under an execution, or if the assured shall be adjudged a bankrupt, or if the property insured be assigned under any bankrupt or insolvent laws, or if any change take place in title or possession of the property, whether by sale, transfer, conveyance, legal process or judicial decree (succession by reason of death excepted) and the defendant avers that prior to the 29th day of March, 1891, and prior to the happening of the fire in the declaration mentioned, the property was

sold by the plaintiffs under a deed of trust, and this it is ready to verify.

"And for a second plea, the said defendant says that the said policy in the declaration mentioned by reason of the aforesaid provisions therein contained, became and was void and of no effect prior to the said 29th day of March, 1891, and prior to the happening of said fire, because it says that prior to said day and prior to said fire a decree of foreclosure of the mortgaged property was passed and entered in the Circuit Court of Baltimore City, and this it is ready to verify.

"And for a third plea, it says that the aforesaid policy in the declaration mentioned by reason of the said provisions therein contained, became and was void and of no effect prior to the said 29th day of March, 1891, and prior to the happening of said fire, because it says that prior to said day and prior to said fire, a change took place in the possession of the said mortgaged property, and this it is ready to verify." The defendant also filed a fourth plea, alleging that the plaintiffs had been fully indemnified and paid by other insurers, for all loss and damage alleged to have been sustained by them by reason of the fire. The plaintiff filed six replications to these pleas and the defendant demurred to all of them. The demurrers were overruled and the defendant had leave to plead over. The replications and demurrers are sufficiently stated in the opinion of the Court. The defendants joined issue on the replications and the case was tried before the Court without a jury. The policy was effected in October, eighteen hundred and ninety, by O. Hammond, Jr., on a brick building and certain machinery contained in it; the amount insured was twenty-five hundred dollars and the loss, if any, was made "payable to Alexander Brown & Sons, as interest may appear." The property insured and the direction that the loss should be paid to Brown & Sons, appear in an

endorsement on the policy, which seems to have been made at the time it was issued. The evidence in behalf of the plaintiffs tended to show that the building and machinery were seriously injured by fire on the twenty-ninth day of March, 1891, and that the damage exceeded the sum of eighteen thousand nine hundred dollars and that they held a mortgage from Hammond executed in 1884 for fifty thousand dollars on the insured property, and that at the commencement of foreclosure proceedings (as they are called in the bill of exceptions) hereafter mentioned, the sum of thirty-six thousand dollars with some interest was due. The evidence for the plaintiffs further tended to show that at the time the policy was issued and continuously down to the time of the fire the insured premises were leased by Hammond to the Charles H. Rohr Packing Company and that neither the mortgagor nor the mortgagees nor the plaintiffs as purchasers were in actual possession of the premises, but the lessees had exclusive occupancy of them; and that the property was insured on the same risk by twenty-one policies (including this one and one by The Merchants Fire Insurance Company); that the aggregate amount insured was thirty-three thousand dollars on the building and twenty-three thousand dollars on the machinery and that all the policies had substantially the same contributory clause (so-called) as the policy of the defendant. There was also evidence tending to show that the portion of loss payable by defendant was seven hundred and seventy-five dollars and sixty-four cents. Notice of loss was given to defendants and proofs of loss furnished.

By the terms of the policy it was to become void and of no effect " immediately upon the passing or entry of a decree of foreclosure, or upon a sale under a deed of trust, or levy under an execution, or if assured shall be adjudged a bankrupt, or if the property insured be assigned under any bankrupt or insolvent laws, or if any change take place in title or possession of the prop-

erty, whether by sale, transfer, conveyance, legal process or judicial decree (succession by reason of death excepted,) or if the policy before loss be assigned without consent of the company endorsed hereon." It contained also the following clause: "In no case shall the claim be for a greater sum than the actual damage to or cash value of the property at the time of the fire, nor shall the assured be entitled to recover of this company any greater proportion of the loss or damage than the amount hereby insured bears to the whole sum insured on said property, whether such other insurance be by specific or by general or floating policies, and without reference to the solvency or the liability of other insurers." The defendant offered in evidence the mortgage from Hammond to Alexander Brown & Sons. This mortgage contained a power of sale by Stewart Brown named as the duly constituted attorney or agent of the mortgagees. The defendant also proved that the attorney on the twenty-sixth day of March, 1891, sold the insured property to the plaintiffs for the sum of twenty-five thousand dollars, and the sale was reported to the Circuit Court of Baltimore City. On the twenty-eighth of March, 1891, the usual order *nisi* was passed, and on the second of July of same year, the sale was finally ratified and confirmed. The auditor's report allowed to plaintiffs from the proceeds of sale more than twenty-three thousand dollars on their mortgage debt, and showed a balance due them of more than thirteen thousand dollars. Defendant offered evidence tending to prove that the total loss to the property insured amounted to seventeen thousand three hundred and ten dollars, as ascertained by arbitration between the plaintiffs and nineteen insurance companies, who had issued policies on the same risk, and that this sum had been paid to the plaintiffs, and that the amount of insurance covered by these nineteen policies aggregated fifty-one thousand dollars, and that on seventeen of these policies the agents of the

insurance companies had made an endorsement in the following form on the twenty-sixth day of March, 1891. "This policy continued in name and for account of Alexander Brown & Sons, who have purchased the within described property under foreclosure sale, subject to ratification by Court." The plaintiffs then in rebuttal offered evidence that they were not satisfied with the amount of the loss awarded in the arbitration, and commenced suit on some of the policies, and threatened suit on all the rest, whereupon a compromise was effected, whereby in addition to the sum awarded by the arbitration, they were to receive the amounts which upon proper contribution would be payable to the said companies by the Merchants Insurance Company and the Hanover Insurance Company, and that the claim for these amounts was assigned to them. This evidence was admitted against the defendant's objection and it excepted. The first three prayers of defendant required the Court to find as matter of law that there had been an entry of a decree of foreclosure, a sale under a deed of trust, and a change in possession of the property. The fourth prayer maintained that if the total damage sustained by the plaintiffs amounted to seventeen thousand three hundred and ten dollars, and that this sum was paid to them by the nineteen other companies, the plaintiffs were not entitled to recover, although the nineteen companies made the aforesaid assignments to them. The Court rejected all these prayers and the defendant excepted. Verdict and judgment being rendered against it an appeal was prayed.

The cause was argued before ALVEY, C. J., BRYAN, FOWLER, PAGE, ROBERTS, and McSHERRY, J.

*Robert D. Morrison,* (with whom were *Howard Munnikhuysen,* and *Nicholas P. Bond,* on the brief,) for the appellant.

Hanover Fire Ins. Co. vs. Brown.

*Stewart Brown,* (with whom was *Arthur Geo. Brown,* on the brief,) for the appellees.

BRYAN, J., after stating the case, delivered the opinion of the Court.

"The passing or entry of a decree of foreclosure is one of the causes which according to the terms of the policy would make it void; and it is maintained by the defendant that the proceedings for a sale under the mortgage were equivalent to the entry of such a decree within the meaning of the policy. A mortgage is in law a conditional sale. The mortgagor in consideration of so much money sells the property to the mortgagee, upon the condition, however, that the sale is to be void, provided by a given day the mortgagor, repays the money with interest. If the mortgagor fails to repay the money with interest at the time stipulated, the mortgagee's title to the property becomes absolute at law, because the condition subsequent which was to defeat it has not been performed. But Courts of equity give to the mortgagor what is called the equity of redemption; that is they allow him to redeem his forfeited mortgage by repaying notwithstanding the default the sum mentioned therein. And the only way for the mortgagee to prevent this redemption is to file a bill in equity in which he calls upon the mortgagor to repay the money, or be forever foreclosed of his equity of redemption. The Court, in due course, passed a decree appointing a day for the money to be paid, and declaring that if it is not paid at or before that time the mortgagor's right of redemption shall be forever taken away. Upon the failure to pay at the designated time the decree is made final and absolute. This is a decree of foreclosure and it was the ordinary proceeding in behalf of mortgagees before the Act of Assembly, which authorized Courts of equity to decree that the property should be sold.

The decree for foreclosure has disappeared from our prac-
tice, being entirely superseded by the more convenient
decree for sale, which is however sometimes, though
inaccurately called, a foreclosure decree.   The proceed-
ing in this case was not a decree of any kind, but an
advertisement and sale under a power contained in a
mortgage.   To be sure the sale under such a power
would be as effective as a sale under a decree of a Court
of equity and so would any other sale lawfully made.
But if we could consider it as equivalent within the
meaning of the policy to a decree, we could not disre-
gard the difference between a decree for a sale and a
decree of foreclosure.   A sale under a decree does not
pass the title unless it is ratified and confirmed.   The
Court is the vendor acting through its agent the trustee
who has been appointed to make the sale.   He reports
to the Court the offer of the bidder for the property; if
the offer is accepted, the sale is ratified, and thereupon,
and not sooner, the contract of sale becomes complete.
Before ratification the transaction is merely an offer to
purchase which has not been accepted.   On the other
hand a decree of foreclosure *ipso facto* extinguishes the
mortgagor's right of redemption and vests the entire
title in the mortgagee.

Another cause which would render the policy void is
a sale under a deed of trust, or any change in the title
or possession of the property.   It was necessary that the
sale made by the attorney named in the mortgage should
be reported to a Court of equity, and when it was re-
ported, the same proceedings were required, as if it had
been made by a trustee under a decree.   Code, Article
66, section 9, Public General Laws.   We have seen that
the sale was not a complete contract, and that when
reported, it was merely an offer to make a purchase
which had not been accepted by the only authority com-
petent to accept it; that is to say the Court.   If we

read the whole of this clause containing the causes of forfeiture it is evident that the purpose was to provide that the insurance should cease to be effective as soon as the title of the insured came to an end. It was not intended that he should have a right of recovery for the destruction of property which he did not own. But it could not have been the purpose to forfeit the policy while his ownership continued. The sale under a deed of trust mentioned in the policy means a consummated transaction by which the interest of the insured was divested. The sale made by the attorney was finally ratified by the Court after the fire had occurred. Before this ratification the proceeding was merely an unaccepted proposition for a purchase and no change had taken place in the title. The property was occupied by a tenant of Hammond, the insured, and his occupancy was in law the possession of his landlord and it continued to be vested in him until the change of title had been accomplished.

The fourth prayer presents a question of some interest. If all the insurers had bound themselves by their policies to pay the entire loss and one or more of them had paid it, those so paying would have had a right of action against the others for a ratable proportion of the amount paid by them; because they would have paid a debt which was equally and concurrently due by the other insurers. As all were equally bound, all ought equally to contribute to the payment; they were in a position similar to that of one surety who pays a debt for which other sureties are bound jointly with him. But in the different policies concerned in this case there is no concurrent liability. Each insurer by the distinct terms of his contract makes himself liable for a certain and definite fractional part of the loss to be calculated in the manner stipulated in the policies. In this case the defendant contracts to pay the proportion of the loss

which the amount insured by it bears to the whole sum insured on the property in all the policies; and it is stated in the evidence that the other policies had substantially the same stipulation. The contracts are entirely separate and independent of each other. Each insurer binds himself to pay his own proportion of the loss without any reference to what may be paid by the others. If they pay more or less than they are bound to pay, or if they do not pay anything, it in no manner concerns him. If in this case the other insurance companies had paid the whole loss they would have had no right of contribution from the defendant; and neither would such payment have discharged any portion of the defendant's liability to the insured. *Lucas vs. Jefferson Insurance Company*, 6 *Cowen*, 635, was an action on a fire insurance policy with a clause exactly similar to the one now in question. The Court decided as follows: "Where there are several policies containing this clause they are all, and each, liable to pay the ratable portion mentioned in the clause, though it happen that some have paid more than their share; and even enough to cover the whole loss, and this whether they had knowledge of all the policies at the time or not. There is no contribution between policies containing this clause. * * * When there are several polices on the same subject, without this clause, it is double insurance; they are all deemed but one policy, the insured can recover but one indemnity; and contribution prevails between the insurers." And it was considered perfectly well settled in cases where policies did not contain this clause and the insured recovered against one or more of them the amount of his loss, that he could not maintain his action against any of the other insurers. The reason was that he had recovered full indemnity from parties who stood in the position of co-insurers and who had a right of contribution against the makers of the other

policies. The doctrine of *Lucas' Case* was fully approved in *Whiting, use of Sun Mutual Insurance Company vs. Independent Mutual Insurance Company*, 15 *Md.*, 297, where the same principles were applied to a different state of facts presented in a suit on a marine policy. It will be seen that it was an error in the fourth prayer to suppose that the payment of the whole loss would exonerate the defendant, inasmuch as it was not liable for contribution to the insurers who are alleged to have made the payment. We are now prepared to decide the question of evidence in the first exception. The assignments of their rights of contribution made by the other insurance companies were entirely futile, as they had no right of contribution against the defendant. The admission of the evidence introduced into the case an element of responsibility which could not be properly asserted against it. The plaintiffs' insurable interest was the debt secured by the mortgage. A portion of this debt had been paid before the suit was brought, as shown by the auditor's report which distributed the proceeds of the sale, and there still remained due more than thirteen thousand dollars. The defendant was liable for its due proportion of this amount and nothing more.

We have reserved the consideration of the demurrers until the last. The first, second and third replications refer to documents which did not appear in any previous pleadings, and it is prayed that they may be considered as parts of these replications. It is the object of pleading to place on the record the facts which make up the plaintiff's cause of action, and the defendant's ground of defence. If it is desired to show to the Court the contents of a paper not already spread on the record, it may be done by exhibiting it, or by averring the legal effect of its contents; but it is totally inadmissible by reference to incorporate into a pleading the contents of a paper which is not produced. In determining the

Hanover Fire Ins. Co. *vs.* Brown.

validity of the pleadings, it is not competent for the
Court to consider anything which does not appear on
the record.    There are some redundancies and erroneous
legal deductions in the first replication; but it substan-
tially avers that there was no sale of the insured prop-
erty within the meaning of the policy, as is averred also
by the second and third replications.    We must look to
the substance of the pleadings, and not hold them insuf-
ficient because of the informalities which have been
mentioned.    There is no error in the fourth and fifth
replications.    The sixth replication is to the defendant's
fourth plea.    This plea avers such insurance by other
companies, and payment in full by them as would exempt
the defendant from a suit by the plaintiffs, according to
what we have said in a previous part of this opinion.
There is no reference in the plea to the clause stipulat-
ing for a proportionate liability among the insurers, and
it does not appear in the declaration.    Without this
clause we have seen those who did not pay would be
liable for contribution to those who had paid the amount
insured.    We must take the plea as averring insurance
by policies which did not contain this clause.    The repli-
cation to the plea does not aver that the other insurers
had paid more than their ratable portion of the loss;
but it avers a compromise with them and an acceptance
of a smaller sum than the amount claimed by the plain-
tiffs, and an assignment to the plaintiffs of their claim
against the defendant, in satisfaction of the larger sum
demanded from them.    They would have no right of
contribution unless they had paid more than their rat-
able share of the loss.    Moreover, the declaration in the
cause is on a policy of insurance, and avers a direct lia-
bility to the plaintiffs on the contract contained in the
policy, and this replication brings forward a new and
distinct cause of action founded on several assignments
of claims for contribution alleged to be due to other

insurance companies. This is the error which is called a departure in pleading. The replication was bad on demurrer. It will be seen, however, that both plea and replication were dealing with supposed policies of insurance different in character from those which were afterwards offered in evidence; that is to say, with such as did not contain the stipulation for proportionate liability. The sixth replication, though erroneous, would have caused no injury to the defendant in itself; but it furnished the occasion for the admission of the incompetent evidence in the first exception.

> *Judgment reversed, and*
> *new trial.*

(Decided 19th January, 1893.)


A motion was made by the appellees for a re-hearing of the foregoing case, and in support of the motion they filed a brief. The motion was resisted by the appellant. The Court overruled the motion, and delivered the following opinion through Judge BRYAN:

We have carefully considered the opinion in this case, and find no reason to change it in any respect.

In *National Fire Insurance Company vs. Crane*, 16 *Md.*, 261, a policy of fire insurance had been issued to Gray and Brother which contained these words: "Loss, if any, payable to W. Crane & Co. as per application," and it was decided by this Court that by reason of these words the policy should be regarded as having been at its inception assigned to Crane & Co. The endorsement on the policy in this case made by the insurance company at the time it was issued was in these words: "Loss, if any, payable to Alexander Brown & Sons, as interest may appear." We, therefore, thought that it was to be considered as assigned to Brown & Sons, to protect their interest in the insured premises as it might be shown to exist. The effect of an assignment of a

policy of insurance is well known; when the insurance company assents to it, a new contract arises between it and the assignee, having all the terms and conditions of the policy; the assignee being substituted in the place of the party originally insured, and becoming the owner of the policy. In the case of a fire insurance it is not questioned any where that the policy holder cannot recover unless he has an interest in the property insured, and that his recovery cannot be more than the amount of his loss. In *Lynch vs. Dalzell*, Lord KING is reported in 2 *Marshall on Insurance*, 803, to have said: "These policies are not insurances of the specific things mentioned to be insured, nor do such insurances attach on the realty, or in any manner go with the same, as incident thereto, by any conveyance or assignment. But they are only special agreements with the persons insured, against such loss or damage as they may sustain. The party insured must have a property at the time of the loss, or he can sustain no loss, and consequently can be entitled to no satisfaction." His decree was affirmed by the House of Lords in 4 *Brown's Cases in Parliament*, 431, and has always been considered as having finally settled the law. The mortgage debt due to Brown & Sons was the extent of their interest in the insured property, and they had a right to recover the unpaid portion of this debt, provided it did not exceed the sum insured. Their damage by the fire could not be more than the amount of the debt which remained due. If the morning after the fire their debtor had paid them in full, no one could suppose that they had not been indemnified. In the record of this case the evidence showed that by the auditor's account the balance due the mortgagees was about thirteen thousand dollars. When we spoke of this sum as the amount due, we necessarily intended to be understood as speaking in reference exclusively to the evidence as stated in the record, and

not as determining a question of fact which would conclude either of the parties on a subsequent trial. It would have exceeded our jurisdiction to find facts on this bill of exceptions; but it was legitimate to assume for the purposes of the discussion the verity of the evidence therein stated, and make it the basis of our opinion on the questions of law which it presented. If in point of fact the auditor's report has not been ratified, the conclusion which we founded on that hypothesis, of course, falls to the ground.

We consider it just in this case to regard Brown & Sons in the same position by virtue of the assignment, as if they had originally insured their mortgage debt, and as therefore sole owners of the policy. We have examined the authorities cited in the argument and briefs of counsel; it is shown by them that in some jurisdictions the endorsement on the policy would not work an assignment of it. But in this State the law on this point has been settled by *Crane's Case* in 16 *Md.;* and we consider our decision as a legitimate deduction from the principles of that case. We feel great respect for the opinions of the learned Courts which we have examined on the questions here involved, but we cannot follow them where our own law prescribes a different rule of decision.

*Motion overruled.*

· (Filed 22nd June, 1893.)