ROCHESTER GERMAN INS. CO. OF ROCHESTER, N. Y., et al. v. SCHMIDT.

(Circuit Court of Appeals, Fourth Circuit. November 4, 1909.)

No. 756.

1. INSURANCE (§ 604*)—ACTIONS ON POLICIES—EQUITY JURISDICTION.

Co-ordinate policies of insurance on the same property, in which no agreed value was stated, each provided that the company should not be liable for a greater proportion of any loss than the amount insured thereby should bear to the whole insurance, but also that the owner should carry insurance to the extent of 75 per cent. of the value of the property, or, failing to do so, should become a co-insurer to the extent of the deficiency. Each also contained a provision that "the extent of the application of the insurance under this policy or of the contribution to be made by the company in case of loss may be provided for by agreement, written hereon or

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

attached or appended hereto," and in accordance therewith a stipulation was attached apportioning the company's liability pro rata between different items enumerated according to values given them. *Held*, that such policies were wholly independent contracts, the proportion of any loss which each must bear being fixed without reference to the others, and hence there was no ground of equity jurisdiction to apportion a loss between them or enforce contribution, but the liability of each company was determinable in an action between it and the insured.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1502, 1503; Dec. Dig. § 604.*]

**2.** EQUITY (§ 51*)—GROUNDS OF JURISDICTION—PREVENTING A MULTIPLICITY OF SUITS.

A common interest in the question involved cannot alone lay the foundation for the joinder of parties in a suit in equity on the ground that it will prevent a multiplicity of actions at law, but there must also be a common interest in the subject-matter.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 167–171; Dec. Dig. § 51.*]

**3.** EQUITY (§ 51*)—JURISDICTION—GROUNDS—MULTIPLICITY OF SUITS—EXTENT OF LIABILITY—OTHER INSURANCE.

Insurance companies which have issued concurrent policies on the same property, where the liability of each is independent of the others, and can be fully determined in an action at law between it and the insured, cannot join in a suit in equity against the insured to determine the liability for a loss, on the ground that it will prevent a multiplicity of actions.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 167–171; Dec. Dig. § 51.*]

**4.** COURTS (§ 508*)—FEDERAL COURTS—EQUITY JURISDICTION—INJUNCTIONS.

Where four independent actions at law were brought in a state court by an insured against different insurance companies to recover on policies covering the same loss, two of which were removed into a federal court, the other two not being removable, the federal court was without jurisdiction, under Rev. St. § 720 (U. S. Comp. St. 1901, p. 581), prohibiting such courts from issuing injunctions to stay proceedings in a state court, to grant an injunction on a bill subsequently filed by the insurance companies restraining the plaintiff therein from proceeding further in the actions in the state court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1418–1430; Dec. Dig. § 508.*]

On reargument. Reversed.

For former opinion, see 162 Fed. 447, 89 C. C. A. 333.

This is an appeal from the final decree and judgment filed February 24, 1907, and the last of March, 1907, in the Circuit Court of the United States for the District of South Carolina, wherein it was decreed and adjudged that the defendant Nora Martin Schmidt was entitled to $5,350, and interest and costs, in the case against the complainant and three other insurance companies, defendants. The bill of complaint was filed by the complainant insurance company, on behalf of itself, as well as on behalf of the other three defendant companies. It was alleged in the bill that the four insurance companies are in substantially the same plight and condition, take exactly the same position, raise the same questions, and the relief prayed for is for the benefit of all the insurance companies alike. On July 17, 1903, subsequent to the death of Frederick Schmidt, on May 10, 1903, Nora Martin Schmidt instituted four separate suits in the court of common pleas for Richland county, S. C., against each of the four insurance companies in amounts severally the same as in the proofs of loss. Each defendant filed its separate answer, denying all liability upon the policies sued upon. Two of these cases, that of the complainant and that of the Palatine Insurance Company, were duly removed to the Circuit Court for the District of South Carolina, but the other two cases, to wit, the one against the Phœnix Insurance Company and the other

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

against the Agricultural Insurance Company, were not removed, because the amount involved was not sufficient to give the federal court jurisdiction. Subsequently, complainant filed this bill in the Circuit Court of the United States in equity. This case was heard by this court and decided on May 9, 1908, and the judgment of the lower court (151 Fed. 681) was reversed (162 Fed. 447, 89 C. C. A. 333). Appellee filed a petition for reargument May 27, 1908, and the case was set down for rehearing.

John T. Seibels and John P. Thomas (Thomas & Thomas, on the briefs), for appellants.

E. J. Best, W. Boyd Evans, and D. W. Robinson (L. D. Melton, on the briefs), for appellee.

Before PRITCHARD, Circuit Judge, and KELLER and McDOWELL, District Judges.

PRITCHARD, Circuit Judge (after stating the facts as above). There are a number of assignments of error, but, after carefully considering the same, we only deem it necessary to discuss the one which raises the question as to whether the court below had jurisdiction. While the appellants preserved their rights to have this question considered at the former hearing, the same was not insisted upon at that time; Judge Morris, in referring to this question, said:

"The defendant Nora Martin Schmidt duly appeared and demurred to the bill, upon the ground that she was entitled to have the cases she had instituted against the four insurance companies determined in a court of law with a jury, and that the complainant and the other insurance companies had a plain, adequate, and complete remedy and defense at law. This demurrer came on to be heard before the late 'Circuit Judge Simonton, and he held against the contention of Mrs. Schmidt that the court had jurisdiction to entertain the bill of complaint. 126 Fed. 998. The correctness of that decision is not before us for examination on this appeal, and cannot be considered by us."

Four suits were instituted against the insurance companies mentioned in the state court, two of which were removed to the United States court and two are still pending in the state court. Upon the filing of the bill herein, the lower court granted a restraining order, which, among other things, provided:

"That Nora Martin Schmidt and each and every one of the defendants named in said bill of complaint and all parties hereto be restrained from taking any further steps or proceedings or serving or filing any further pleadings in any of the suits originally instituted by the said Nora Martin Schmidt against the complainant and defendant companies named in said bill of complaint, and that the said Nora Martin Schmidt be restrained from undertaking to enforce any cause of action she may have, * * *" etc.

A demurrer to the bill was filed by Nora Martin Schmidt upon the following grounds:

"(a) That there are other actions pending in the state court and in the Circuit Court of the United States, on the law side of the said courts, involving the same subject-matter, and the same defenses as are involved in the complainant's bill herein; that said courts are of co-ordinate jurisdiction with this court, and the actions in said cause were begun, pending, and at issue at the time of the commencement of the complainant's suit in equity herein; and that such co-ordinate courts of law have complete and full jurisdiction to hear and determine all of the matters and things at issue in said action, being the same matters at issue herein.

"(b) In that it appears on the face of the complainant's bill in equity (paragraph 14 and the first and second paragraphs of prayer for relief), taken in connection with paragraphs 10 and 11 of said complaint, that the purpose of this suit in equity is to stay proceedings in the actions at law begun and pending and at issue before the commencement of this suit in equity by Nora Martin Schmidt against the Agricultural Insurance Company and Phœnix Insurance Company, respectively, in the circuit court for the county of Richland, and state of South Carolina: and to stay proceedings in the Circuit Court of the United States, Fourth Circuit, District of South Carolina, in the cases of Nora Martin Schmidt against Palatine Insurance Company, and Rochester German Insurance Company, respectively, on the law side thereof, contrary to the prohibition of the statute of the United States. Rev. St. § 720.

"(c) That it appears upon the face of the complainant's bill in equity that the complainant herein has a plain and adequate and complete remedy at law and defense to and against the insurance policy issued by it as set forth in said bill of complaint."

The next two paragraphs raise substantially the same question, and the fourth paragraph is to the effect that:

"It appears on the face of the said complaint (in the caption thereof and in paragraph 1) that the plaintiff herein is a citizen of the state of New York, and the defendant Phœnix Insurance Company of Hartford, Conn., and the defendants Agricultural Insurance Company of Watertown, New York, and Abram Z. Tallman, each and all are citizens of the same state as said complainant, and therefore this court has no jurisdiction to entertain this action under and in accordance with Rev. St. § 739, as amended by 25 St. at Large, 433, c. 866, § 1, of the Act of August 13, 1888."

The demurrer was overruled, and exceptions taken to the same; and, while as we have said, this question was not urged at the former hearing, yet it is now before us for consideration.

In order to reach a proper conclusion in regard to this matter, it is necessary to determine whether, in view of the facts, the court below, on the equity side of the docket, had jurisdiction to hear and determine the controversy as presented by the allegations contained in the bill. It is insisted by counsel for appellants that, in determining the questions involved in this case, we are governed by the decision of this court in the case of the Home Insurance Company v. Virginia-Carolina Chemical Company (C. C.) 109 Fed. 681, and 113 Fed. 1, 51 C. C. A. 21, and that the facts in that case are identical with the case at bar. It appears that the decision of the Circuit Court of Appeals in that case is based wholly upon the statement of facts, which are distinctly set out by the court below at page 687 as follows:

"* * * The sixth and last ground is for want of equity in the bill. This will be first considered. The bill charges that the property insured, by means of fraudulent misrepresentation and concealment, was placed at a valuation exceeding its true value 100 per cent.; that the contracts of insurance were made with reference to the value of the property at risk, and the liability of each complainant was measured by the proportion which the amount of risk assumed by it bore to the actual loss, taking into consideration the whole amount of risks assumed. The first question which arises is, Can the question of the valuation of the property at risk be now inquired into in view of the legislation of the state of South Carolina on this subject? * * *"

The court held that such valuation could be inquired into for fraud; and, after so holding, proceeds as follows:

"In order, therefore, in each case to ascertain the amount to be paid by each insurer if liability exists, the policy must be reformed in so far as it

states the value of the property insured; and then the proportion which the amount or sum each assumed bears to the entire insurance must be ascertained. If the statements of the bill in this regard are true—and for the purposes of this demurrer we must take them as true—then complainants have set up an equity to maintain their bill, and they have no plain, adequate, and complete remedy at law."

By reference to the bill filed in that case, the following allegations in regard to the co-insurance clauses will be found:

"Your orators show that by the terms of each of the insurance policies issued by your orators and the other insurers upon said property described in Exhibit A, it is provided that no company shall be liable under its policy for a greater proportion of any loss on the described property or for loss by and expense of removal from premises endangered by fire, than the amount insured by such policy shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers covering such property."

An examination of the facts relied upon in that case shows that the policies in each instance contained a statement as to the value of the property insured, and were what are known as "valued policies," as provided by the statute of South Carolina; that when the policies were issued it was the understanding of the parties and the companies issuing them that the' valuation of the property as therein stated was correct; and it was alleged that such valuation was induced by the fraudulent misrepresentation and concealment of the insured. The court of equity was therefore asked to reform the policy by having it show the correct valuation, thus limiting and decreasing proportionately the amount of insurance on the several policies issued. It was also alleged that the policies thus issued were dependent upon each other, and that each would necessarily be effected with a view to the other; or that the loss each sustained was to be proportioned to the whole insurance covering the property thus insured.

When we come to examine paragraphs 3, 4, and 5 of the policies involved in the case at bar, it appears that no one of the policies was what is termed a "valued policy." There is nothing contained in any of these policies which undertakes to fix the value of the property. However, there is a stipulation clause on the face of the policy which reads as follows:

"This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation, however caused, and shall not in any event exceed what it would cost the insured to repair or replace the same with material of like kind and quality; said ascertainment or estimate shall be made by the insured and this company, or, if they differ, then by appraisers as hereinafter provided; and the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate, and satisfactory proof of loss have been received by this company in accordance with the terms of this policy."

And then there appears a provision to the effect that the company may take the damaged articles, at such value as may be ascertained, at its option; also, that it may repair, rebuild, or replace the lost or damaged property at its option. There being nothing contained in any of these policies which fixes the value of the property insured,

it necessarily follows that the equity set up in the case of the Home Insurance Company v. Virginia-Carolina Chemical Company, supra, is not shown here and cannot be relied upon in this case in support of the contention of the appellants. In other words, the facts stated by the complainant are not such as to entitle it to have the policies reformed. The second ground of equity relied upon in that case, to wit, "co-insurance," cannot be sustained by the allegations or the proof in this case. It is true that the policy filed as an exhibit to the bill in this instance contains a clause similar to that in the case of the Home Insurance Company v. Virginia-Carolina Chemical Company, supra, but it is also true that it contains an additional clause, which is very material. The whole clause reads as follows:

"This company shall not be liable under this policy for a greater proportion of any loss on the described property, or for loss by and expense of removal from premises endangered by fire, than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property, and the extent of the application of the insurance under this policy or of the contribution to be made by this company in case of loss, may be provided for by agreement or condition written hereon or attached or appended hereto."

That portion of the foregoing, which constitutes an addition to the clause, as will be observed, reads as follows:

"* * * And the extent of the application of the insurance under this policy or of the contribution to be made by the company in case of loss, may be provided for by agreement written hereon or attached or appended hereto."

This addition clearly changes the nature of the contract in that respect, and is material to be considered as bearing upon the questions involved in the case at bar. Notwithstanding this clause, taken as a whole, provides for a proportionate share of loss with other insurance companies, it expressly provides that the extent of the application of contribution may be provided by a stipulation attached to the policy. Therefore, while in the case of the Home Insurance Company v. Virginia-Carolina Chemical Company, supra, this clause stood alone, in this instance it is governed and controlled by the stipulation attached to the face of the policies. By reference to a copy of the policy which is filed as an exhibit, and which sets out more particularly this matter than in paragraphs 5 and 15 of the bill, it will be observed that a stipulation is attached to the policy in regard to this matter, which reads as follows:

"This policy being for $2,500, covers pro rata on each of the following items and amounts not exceeding $2,500 in all."

Following this stipulation, it appears that there are several items, as set forth in paragraph 5 of complainant's bill, which amount to $8,100. It is also provided in the policy that the insured shall carry insurance to the extent of 75 per cent. of the total cash value of the property, and that, unless he does so, he becomes himself a co-insurer to the extent of the deficiency. This, it seems to us, clearly shows that it was not the intention of the parties to the contract that there should be a fixed amount of co-insurance, which eliminates from this case the second ground of equity relied upon in the case of Home Insurance

Company v. Virginia-Carolina Chemical Company, supra. The pro rata share of insurance this policy must bear is fixed; and, while it does not fix the amount, it does provide that it shall not exceed the sum of $2,500, and that it may amount to less than that.

In the absence of an apportionment clause or condition, there might be a question of contribution in this case; but, with the insertion of the apportionment clause, as here, the question of contribution in equity is eliminated, and under these contracts the insurance companies cannot be said to be affected under their several contracts as to any amount that may be paid by another company holding a similar policy, either by a voluntary settlement or by the verdict of a jury. The fact that one company may pay a larger or smaller amount in either event cannot be said to concern the other. In the case of Hanover Fire Insurance Company v. Brown, 77 Md. 64, 72, 25 Atl. 989, 991, 27 Atl. 314, 39 Am. St. Rep. 386, it is said:

"The fourth prayer presents a question of some interest. If all the insurers had bound themselves, by their policies, to pay the entire loss, and one or more of them had paid it, those so paying would have had a right of action against the others for a ratable proportion of the amount paid by them; because they would have paid a debt which was equally and concurrently due by the other insurers. As all were equally bound, all ought equally to contribute to the payment; they were in a position similar to that of one surety who pays a debt for which other sureties are bound jointly with him. But in the different policies concerned in this case, there is no concurrent liability. Each insurer, by the distinct terms of his contract, makes himself liable for a certain and definite fractional part of the loss to be calculated in the manner stipulated in the policies. In this case, the defendant contracts to pay the proportion of the loss which the amount insured by it bears to the whole sum insured on the property in all the policies; and it is stated in the evidence that the other policies had substantially the same stipulation. The contracts are entirely separate and independent of each other. Each insurer binds himself to pay his own proportion of the loss, without any reference to what may be paid by the others. If they pay more or less than they are bound to pay, or if they do not pay anything, it in no manner concerns him. If, in this case, the other insurance companies had paid the whole loss, they would have had no right of contribution from the defendant; and neither would such payment have discharged any portion of the defendant's liability to the insured."

In the case of Goodwin v. Merchants' & Bankers' Mutual Insurance Company, 118 Iowa, 601, 92 N. W. 894, the court said:

"It is conceded that the plaintiff's policy being for $1,000, or two-thirds of the total amount of the insurance upon the property, she could not recover from the defendant more than two-thirds of the amount of her loss, less the balance due on her premium note. The trial court so instructed the jury, and it must be presumed that the verdict returned represents the amount due plaintiff on that basis. It is said, however, that the plaintiff received from the Pennsylvania Company $336.65, and that this sum 'should have been deducted from the sum as ascertained by the jury.' It is difficult to conceive upon what theory this claim is advanced. The two companies were liable to the plaintiff, not jointly, but severally, in the proportion of two-thirds and one-third. It was competent for either of these insurers to settle with plaintiff upon any terms upon which they could mutually agree, and, so long as defendant is not required to respond in a sum in excess of two-thirds of the value of the property destroyed, or in excess of the amount named in the policy, it is wholly immaterial whether the Pennsylvania Company paid more or less than it might have been held to pay at the end of a litigation."

In this connection it should be borne in mind that all the policies in the case at bar contain the following clause: "Other concurrent

insurance permitted without notice until required." It is also provided, as hereinbefore stated, that the assured shall maintain insurance on each item of the property insured by the policy of not less than 75 per cent. of the actual cash value thereof, and that, failing to do so, the insured shall become a co-insurer to the extent of the deficit, and bear his proportion of any loss. These clauses are extremely important, showing as they do the distinct and independent character of all these contracts. Loss under one of these policies might have been settled with the assured upon any basis or value of loss agreed upon with the assured, and such settlement would not in any way have affected the rights of the other insurance companies to contest both of these questions. It is also true that the assured could not have resorted to a suit in equity against all the companies, and this fact we regard as conclusive against the right of any or all of the insurance companies to do so. The assured was obliged to sue at law upon her several contracts of insurance; but we know of no principle by which the defendants of such actions, or any of them, can convert a lawsuit into an equitable one at their pleasure. It should be remembered that there is no privity between the several insurance companies in these contracts of insurance. The insured is under no obligation to any of the companies to take out other insurance—he might have elected to carry any part of the insurance himself. No rights of contribution existed between the companies. All of the defenses set up in the bill are available as legal defenses, and the only pretense for the intervention of equity is the contention that the juries in the different lawsuits might find differently upon the questions of values and loss. Whether they would, we do not know, nor can it matter, as there is no privity between the companies and no right of contribution from one to another of them.

It may be argued with some show of reason that there is an equity here to avoid a multiplicity of suits, upon the ground that the case falls within class 4 of the division made by Mr. Pomeroy. 1 Pomeroy, Eq. (2d Ed.) § 245, p. 321. One reason assigned by the author just named for the existence of this equity (where it does exist) is to save the public treasury, the time of the courts and witnesses, from many trials where one will suffice. Mr. Pomeroy shows that the contention made in some decisions that the plaintiff who invokes the jurisdiction of equity on the ground of the prevention of a multiplicity of suits must himself be the party who would be compelled to resort to or defend numerous actions at law unless the court of equity interferes and gives final relief by one decree, is not of universal application, and does not apply to the third and fourth classes of cases enumerated by him. But we know of no case such as the present in which the jurisdiction here contended for has been upheld, for one of the unities required here is lacking, and that is a common interest in the subject-matter of the suit. All of these policies are separate contracts, and we can conceive of no reason why the Rochester German Insurance Company should be permitted to bring suit involving the separate contracts with other insurance companies with the assured, with the making of which it had nothing to do, and the right to recovery under which may

turn upon an entirely different state of facts. The common interest in the subject-matter of a suit brought to prevent a multiplicity of suits is well illustrated by Mr. Justice Nelson, in Cutting et al. v. Gilbert et al., Fed. Cas. No. 3,519, in which a bill of peace founded on the idea that all persons charged with a tax under the ninety-ninth section of the Internal Revenue Act of June 30, 1864, c. 173, 13 Stat. 273, have such a unity of interest in contesting the tax that they may join as plaintiffs in a bill to restrain the assessment and collection of such tax, was dismissed for lack of jurisdiction, upon the ground that, to authorize such suit, their interest must be not only one in the question, but one in common in the subject-matter of the suit. Mr. Justice Nelson, in discussing the doctrine under which equity may take jurisdiction to avoid a multiplicity of suits, after pointing out that in the adjudged cases in which the jurisdiction has been sustained there is a community of interest growing out of the nature and condition of the rights in dispute, for, although there may not be any privity between the numerous parties, there is a common title out of which the question arises, and which lies at the foundation of the proceedings, remarks as to the case then before him:

"In the case before me, the only matter in common among the plaintiffs, or between them and the defendants, is an interest in the question involved, which alone cannot lay a foundation for the joinder of parties. There is scarcely a suit at law or in equity, which settles a principle or applies a principle to a given state of facts * * * that does not involve a question in which other parties are interested * * * ; yet no lawyer would contend that such an interest would justify a joinder of parties as plaintiffs, in a case arising under the law of trusts, or under any of the statutes mentioned. The same may be said of the questions arising under the revenue laws, such as the tariff and the excise laws, which are the subject of litigation in the courts almost daily. Large classes of persons, other than the parties to the suit, are interested in the questions involved and determined. To allow them to be made parties to the suit would confound the established order of judicial proceedings, and lead to endless perplexity and confusion."

The case of Scottish Union, etc., Ins. Co. of Edinburgh et al. v. J. H. Mohlman Co. (C. C.) 73 Fed. 66, decided by Judge Lacombe in 1896, seems to be similar to the one at bar in all respects, save that the insurance companies interested in that case all united as plaintiffs. The bill was dismissed as not properly involving the equity to prevent a multiplicity of suits. To similar effect, see Thomas v. Council Bluffs Canning Co., 92 Fed. 422,[1] decided 1899, by the Circuit Court of Appeals for the Eighth Circuit, and Schulenberg-Boeckeler Lumber Co. et al. v. Town of Hayward et al., 20 Fed. 422, decided in 1884 by Judge Bunn. See, also, Dows v. City of Chicago et al., 11 Wall. 108, 20 L. Ed. 65, and Cummings v. Merchants' Nat'l Bank of Toledo, 101 U. S. 157, 25 L. Ed. 903, from an examination of which it seems clear that the jurisdiction in a case such as the one at bar is not sustainable upon the ground of the avoidance of a multiplicity of suits.

So far as we have been able to ascertain no decision of the Supreme Court warranted the trial court in disregarding section 720, Rev. St. (U. S. Comp. St. 1901, p. 581), by enjoining Mrs. Schmidt from prosecuting the two actions at law which were not removed from the state court. Diggs v. Walcott, 4 Cranch, 179, 2 L. Ed. 587;

[1] 34 C. C. A. 428.

Haines v. Carpenter, 91 U. S. 254, 23 L. Ed. 345; Dial v. Reynolds, 96 U. S. 340, 24 L. Ed. 644, and U. S. v. Parkhurst, 176 U. S. 317, 20 Sup. Ct. 423, 44 L. Ed. 485, are cases in which bills filed for the purpose of restraining actions pending in the state court were held demurrable because of this statute. And Haines v. Carpenter and Dial v. Reynolds are much stronger than the case at bar, because in them the bills showed independent grounds of equity jurisdiction. But because the injunction to stay proceedings in the state court was the chief relief desired, and as the statute in question forbids such relief, the bills were dismissed. The case at bar is wholly unlike French v. Hay, 22 Wall. 250, note, 22 L. Ed. 857; Dietzsch v. Huidekoper, 103 U. S. 494, 26 L. Ed. 497; Marshall v. Holmes, 141 U. S. 589, 12 Sup. t Ct. 62, 35 L. Ed. 870; and Julian v. Trust Co., 193 U. S. 93, 24 Sup. Ct. 399, 48 L. Ed. 629. Not only was the federal court in the case at bar not protecting a prior jurisdiction of its own, but the state court had previously taken jurisdiction of person and subject-matter. See, also, R. Co. v. Kuteman, 54 Fed. 547, 4 C. C. A. 503, which is strong authority for holding that an injunction to restrain proceeding with an action commenced in a state court before the bill is filed in the federal court is forbidden by section 720, Rev. St.

As the statute forbids the trial court to issue the injunction staying proceedings in the two actions not removed, and as the two actions which were removed can be consolidated, it is clear that the bill shows no equity for avoiding a multiplicity of suits. The demurrer should have been sustained for want of equity, and the court erred in granting the injunction.

Therefore the judgment of the lower court is reversed and the cause remanded, with instructions to dismiss the bill for want of equity jurisdiction at the cost of the complainant below, to the end that the cases may be proceeded with respectively on the law side of the docket and in the state court.

Reversed.

McDOWELL, District Judge. I concur in the conclusion reached.

