DIXIE FIRE INSURANCE COMPANY *et al., v.* AMERICAN
CONFECTIONERY COMPANY *et al.*

(*Nashville.* December Term, 1910.)

1. **MULTIPLICITY OF SUITS.** Chancery has jurisdiction of a
   bill by insurance companies to prevent a multiplicity of actions
   at law in which the remedy would be inadequate.

Where five insurance companies separately issued policies on
a manufacturing plant, insuring it against loss by fire, one
company issuing a policy upon machinery alone; one company
issuing two policies at different dates upon both machinery
and stock, with stipulated sums in each policy on each class
of property; one company issuing one policy upon machinery,
and at a later date another policy upon stock; one company
issuing a policy with certain sums upon building, machinery,
and office fixtures; one company issuing a policy upon the
stock alone; all of which policies were identical, excepting
their dates, their amounts, the property insured, and the name
of the insurer, and each policy provided for a proportional and
limited liability with other insurers; and a loss occurring
while these policies were in force, a bill filed by some of the
insurance companies against the insured and the other insur-
ance companies, and a cross bill by the defendant insurance
companies, showing that the questions common to all the
policies were (1) misrepresentations in procuring the policies;
(2) the keeping of explosives by the insured in violation of the
policies; (3) his failure to separate the damaged and undam-
aged property and to make an inventory thereof; (4) his vio-
lation of the stipulation or condition as to the automatic sprink-
ler system; and (5) the fraudulent arbitration award
wrongly classifying the property and distributing the loss and
valuing the property so excessively as to shock the conscience,
is not demurrable, because chancery has jurisdiction of such

Insurance Cos. v. Confectionery Co.

suit for the adjustment of the liability of each insurer under each policy for the purpose of preventing a multiplicity of actions at law, and because none of them could give efficient and adequate relief, though the actions at law might be consolidated; and it is not necessary that each of the parties should be interested in all of the questions.

Cases cited and approved: Harrison v. Hallum, 5 Cold., 525, 528, 529; Cartmell v. McClaren, 12 Heisk., 41, 42, 43; Walker v. Day, 8 Bax., 77-80; Woodward v. Hall, 2 Tenn. Chy., 164, 166, 167; Hughes v. Tennison, 3 Tenn. Chy., 641-643 (citing Johnson v. Brown, 2 Humph., 328); Ducktown, Sulphur & Iron Co. v. Fain, 109 Tenn., 56, 70; Smyth v. Ames, 169 U. S., 466, 517, 518; Bitterman v. Railroad, 207 U. S., 205, 226; Kelly v. Boettcher, 85 Fed., 55, 64, 29 C. C. A., 14; Curran v. Campion, 85 Fed., 67, 29 C. C. A., 26; Wyman v. Bowman, 127 Fed., 257, 263, 264, 62 C. C. A., 189, 195, 196; Railroad v. Smith, 128 Fed., 1, 63 C. C. A., 1; Railroad v. Caffrey, 128 Fed., 770, 774, 775; Fidelity & Deposit Co. v. Fidelity Trust Co. (C. C.), 143 Fed., 152, 156, 157; Risely v. Utica (D. C.), 173 Fed., 502, 506, 507; Snelling v. Richard (C. C.); 166 Fed., 635, 636; Bracken v. Rosenthal (C. C.), 151 Fed., 136-138; Pennsylvania Co. v. Bay (C. C.), 150 Fed., 770, 773, 774; State v. Knife Falls Boone Corporation, 96 Minn., 194, 199; Hanson v. Neal, 215 Mo., 256, 271; Blumer v. Ulmer (Miss.), 44 South., 161; Tisdale v. Insurance Co., 84 Miss., 709; Insurance Co. v. Landau, 56 N. J. Eq., 513, 522, 523 (and numerous citations); Scofield v. Lansing, 17 Mich., 437, 444; Torrent v. Hamilton, 95 Mich., 159, 161-163; Fegelson v. Insurance Co., 94 Minn., 486; Baumgartner v. Bradt, 207 Ill., 345, 348, 349, 350; Charles Simon's Sons Co. v. Md. Telephone & Telegraph Co., 99 Md., 141, 180; Blakenburg v. Black, 200 Pa., 629; Whipple v. Guile, 22 R. I., 576; Brown v. Tilley, 25 R. I., 579; Almond v. Wilson, 75 Va., 613, 623, 624; Johnson v. Black, 103 Va., 477. See also the citations under the next headnote.

Cases cited and distinguished: Bruton v. Rutland, 3 Humph., 435; Insurance Co. v. Insurance Co., 11 Humph., 134, 35; Rogers

Insurance Cos. v. Confectionery Co.

v. Simpson, 10 Heisk., 655, 657; Insurance Co. v. Schmidt, 175
Fed., 720, 99 C. C. A., 296.

2. **SAME.**  General principles for sustaining or rejecting a bill
upon the ground of preventing a multiplicity of suits.

Each suit sought to be sustained upon the ground of preventing
a multiplicity of actions, if not brought directly within the
principle of some preceding case, must be decided upon its
merits, and upon a survey of the real and substantial conven-
ience of all parties, the adequacy of the real remedy, the sit-
uations of the different parties, the points to be contested, and
the result which would follow if jurisdiction should be assumed
or denied, whether within reasonable and fair grounds the sit-
uation is calculated to be in truth one which will practically
prevent a multiplicity of litigation, and will be an actual con-
venience to all parties, and will not unreasonably overlook or
obstruct the material interests of any.  In avoiding a multiplic-
ity of suits, care should be exercised to guard against that
complication and confusion in the investigation of rights and
the application of remedies, arising from the attempt to blend
in one suit distinct and incongruous claims and liabilities.
(*Post*, *pp*. 265-290.)

Cases cited and approved:   Johnson v. Brown, 2 Humph., 327,
328, 329; Governor v. McEwen, 5 Humph., 241, 263, 264; Bartee
v. Thompkins, 4 Sneed, 623, 634, 636; Fogg v. Rogers, 2 Cold.,
290; Miller v. Harris, 9 Bax., 101; Ducktown, Sulphur & Iron
Co. v. Fain, 109 Tenn., 56; Insurance Co. v. Beasley, MS: at
Jackson, April term, 1908; Insurance Co. v. Trabue, MS. at
Jackson, April term, 1908 (and citations); Hale v. Allinson, 188
U. S., 56, 77; Whipple v. Guile, 22 R. I., 578.  See also citations
under preceding headnote.

3. **SAME.**  Chancery jurisdiction to prevent a multiplicity of ac-
tions at law and to subserve public and. private interests re-
gardless of law jurisdiction.

Chancery has jurisdiction of a suit to prevent a multiplicity of
actions at law, and to subserve thereby both public and private

interests, regardless of the fact that a court of law has jurisdiction. (*Post, pp.* 290, 291.)

4. **SAME.   Relief in chancery against a multiplicity of actions will not be denied, because they might all be consolidated.**

  Relief in chancery on the ground of preventing a multiplicity of actions at law will not be denied, merely because the actions at law should all be brought in one court, and consolidated and heard together. (*Post, p.* 291.)

5. **SAME.   Chancery obtaining jurisdiction to set aside the award under a fire policy will dispose of the whole case.**

  Chancery has jurisdiction, upon the ground of fraud, to set aside an award under a fire policy, made under an arbitration agreement, and, having obtained jurisdiction upon this ground, chancery would proceed to dispose of the whole case, even if the other matters referred to in the first headnote were not involved. (*Post, pp.* 291, 292.)

  Cases cited and approved:   Fire Association v. Allisina, 45 Or., 154, 158; Robertson v. Insurance Co., 68 Fed., 173, 175.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County, to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals to the Supreme Court.—JOHN ALLISON, Chancellor.

STOKES & STOKES and R. L. BARTELLS, for complainants.

H. S. STOKES and JNO. T. LELLYETT, for defendants.

Mr. Justice Neil delivered the opinion of the Court.

The original bill in this case was filed by the Dixie Fire Insurance Company, the North British & Mercantile Insurance Company and the Stuyvesant Insurance Company against the American Confectionery Company, the Globe Underwriters' Agency, and the International Fire Insurance Company.

There was also a cross bill filed by the two latter companies against the complainants and the American Confectionery Company.

There was a demurrer filed to the original bill, and upon the hearing in the court below the chancellor dismissed both bills for want of jurisdiction, and thereupon the complainants and the cross-complainants appealed to the court of civil appeals. In that court the decree of the chancellor was reversed, and the cause remanded to the chancery court of Davidson county for further proceedings. A petition for *certiorari* and *supersedeas* was then filed in this court by the American Confectionery Company, the prayer of which petition was granted, and the cause was set down for argument, and was argued at the bar of this court.

The original bill alleged: That on the 15th of September, 1909, the Dixie Fire Insurance Company issued to the American Confectionery Company a policy of insurance for $5,000, under which it insured the defendant for the period of one year against loss by fire upon the machinery located in the manufacturing plant of the insured; that on August 11, 1909, the North British &

Mercantile Insurance Company issued two policies of insurance to the same insured, one policy being for $7,720, of which amount $1,250 was upon the machinery in said plant and $6,470 was upon the stock, and the other policy being for $5,000, of which amount $1,000 was upon machinery and $4,000 was upon stock; that on August 20, 1909, the same insurance company last named issued another policy for $6,000, of which amount $1,250 was upon machinery and $4,750 was upon stock; that the Stuyvesant Insurance Company, on January 28, 1910, issued to the same insured a policy of $10,000 upon machinery, and on June 4, 1910, issued another policy for the sum of $6,000 upon the stock; that on February 21, 1910, the Globe Underwriters' Agency issued a policy for $28,720, of which $18,720 was upon the building, $9,500 upon the machinery and $500 upon office fixtures; that the International Fire Insurance Company on March 7, 1910, issued a policy for $8,780 upon the stock of the said American Confectionery Company:

That excepting in the name of the insurer, the property insured, the amount insured, and the date of the policy, all of the contracts of insurance issued by the complainant and defendant companies were in every respect identical:

That on the morning of July 4, 1910, a fire occurred in the manufacturing establishment of the American Confectionery Company, by which some of the property covered by the said insurance was destroyed, and some was damaged; that various representa-

Insurance Cos. v. Confectionery Co.

tives of the insurance companies appeared in Nashville soon after the fire, with a view to investigating it and ascertaining the amount of the loss; that prior to entering upon this work these representatives requested of the defendant American Confectionery Company the execution of an agreement under which they would be permitted to make such investigation without waiving any of the legal rights or defenses that each company might have on the policy or policies issued by it, respectively, that in accordance with the request such an agreement in writing was entered into separately by each of the companies, all of said agreements being identical in form, differing only in the signature of the company thereto:

That an appraisal was demanded by the defendant Globe Underwriters' Agency, for the purpose of ascertaining the injury done to the building, and the appraisers estimated the damage thereto at $3,617.43; that complainants are in no way interested in the amount of that award, except that, as subsequently shown in the bill, the amount should be increased, for the reason that the appraisers charged up certain sums for loss on the machinery that should have been charged up for loss on the building:

That an appraisal was demanded regarding the loss on the engine, boiler, and machinery, and that in accordance therewith the appraisers fixed the damage thereof at $20,064; that apportioning said sums ratably among the various companies having policies of insurance on

these items of property would make the amount due from the different companies, if said appraisal was correct, as follows:

Policy No. 171856, Dixie Fire Insurance Company .......$3,571 54

Policy No. 52596, Globe Underwriters' Agency ......... 6,785 93

Policy No. 598976, North British & Mercantile Insurance Company ......................................... 892 89

Policy No. 598985, North British & Mercantile Insurance Company ......................................... 714 30

Policy No. 598986, North British & Mercantile Insurance Company ......................................... 892 89

Policy No. 71102, North British & Mercantile Insurance Company .....·.......................................... 7,143 09

It is further alleged that this appraisal was incorrectly made; that various items of damage to the property were charged up to machinery, when these items should have been charged up to the building; that among the items so erroneously charged up to machinery was one amounting to about $400 for protecting and bracing the water tank on top of the building which furnished water for the sprinkling plant, which property was included in the insurance taken on the building, and not on the machinery:

That the adjustment of the damage done to the stock could not be ascertained or appraised, and that the defendant American Confectionery Company prepared and filed with each of the companies papers purporting to be proofs of loss on account of the burning and damage to the stock; that it is claimed by the defendant American Confectionery Company in these proofs of loss that different sums are owing to it by the companies that

issued policies upon the stock, and that the total amount of damage claimed on account of the destruction or injury to the stock is $27,258.09:

That by the terms of each of the insurance policies issued by the several companies it is expressly provided that no company shall be liable under its policy for a greater proportion of any loss on the described property, or for loss by the expense of removal from the premises endangered by fire, than the amount insured by such policy shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property:

That the amount fixed as the loss on the machinery by the appraisers, as well as the amount named in the proofs of loss as the damage sustained upon the stock are both erroneous, and that, if the companies are liable at all, they can be liable only for their proportionate amount of such loss, to wit, as the amount of each insurance bears to the total insurance; that to do justice between the companies, and to carry out the terms of their contracts, it is necessary that the amount of loss, if any, should be ascertained; also the amount of insurance, and the percentage that the amount of each policy bears to the total amount of insurance and to the total amount of loss to be ascertained and fixed; that if the insurers are liable at all, the loss should be apportioned between them in accordance with the terms and stipulations of their contracts; that by virtue of these contracts of insurance each insurer is interested in the liability of the other; that the only possible way in

which all these matters could be justly and equitably determined would be in one suit; that the American Confectionery Company is threatening to institute, and will institute, separate suits against each of the complainants and the defendant insurers, claiming the amount alleged to be owing by them under the proofs of loss, and this would necessitate the institution of nine separate and distinct lawsuits; that it would be an impossibility to arrive at justice between the insurers through such a multiplicity of suits; that in one suit one set of values might be fixed, and in another, another set of values, and in this way one insurance company might be called upon to pay its proportion in one case upon a certain ratio different from that fixed in another case, so that, instead of the insurers, if liable at all, paying in accordance with their covenants, they would pay in accordance with the divergent findings of separate juries and separate trials, and possibly in separate tribunals; that, if liability at all exists, this presents a case for making a common apportionment and determining the contribution that each of the insurers should bear to the common loss; that this can be apportioned only in a court of equity, where matters of account, apportionment, and contribution are cognizable, and that it could not be done in the nine separate suits threatened as aforesaid; that all the insurance companies have the same defense against the claims of the assured, arising from a common interest in the litigation, and that by one comprehensive suit in equity

all the rights and interests of the insurers can be determined as between them and the Confectionery Company; that the various insurance contracts are interdependent, and are not enforceable without reference to each other, and in that way it would be necessary to determine the equities common to all of them before the liability of any one of them could be ascertained and determined; that for the purpose of preventing a multiplicity of suits, and to equitably and legally adjust the rights of the parties, the court of chancery has jurisdiction, and should enjoin the Confectionery Company from instituting the said nine separate suits.

The bill thereupon proceeds to charge several grounds under which it is alleged the companies are not liable. We need not state these matters with particularity, since the demurrer goes to the jurisdiction of the court, rather than to the validity of the defenses urged against the policies. We shall, however, state these matters briefly. It is alleged that each policy contained the following clause: "This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof." Under this two distinct and important specifications are made.

It is further alleged that each policy contains this clause: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void . . . if (any usage or custom or trade or manufacture to the contrary notwithstanding) there be kept,

used, or allowed on the above-described premises, ben-
zine, benzole, dynamite, ether, fireworks, gasoline, Greek
fire, gunpowder exceeding twenty-five pounds in quan-
tity, naphtha, nitro-glycerine, or other explosives." There
is a specification under this to the effect that the fire was
caused by an explosion, or a series of explosions, when
there was no fire in the building at all, and had not been
for two or three days.

It is also alleged that each policy contains the follow-
ing clause: "If fire occur, the insured shall give imme-
diate notice of any loss thereby in writing to this com-
pany, and protect the property from further damage,
forthwith separate the damaged and undamaged person-
al property, put it in the best possible order, make a com-
plete inventory of the same, stating the quantity and
cost of each article and the amount claimed thereon."
The specification under this is that the Confectionery
Company did not separate the damaged and undamaged
personal property; that it did not put the personal prop-
erty in the best possible order; that it did not make a
complete inventory of it, stating the quantity and cost of
each article, and the amount claimed; but that the Con-
fectionery Company, before the representative of the in-
surance companies arrived, which was not more than
three or four days after the fire, sold or caused to be
hauled away the damaged personal property; that no
effort was made to separate it, or to put it in good condi-
tion, or to make an inventory thereof.

It is further alleged that there is in each policy the

following provision: "It is understood and agreed that this policy is issued, and the rate of premium charged therein is fixed and determined, on condition that the assured shall use due diligence to maintain in complete working order at all times during the full term of this insurance the automatic sprinkler system now in use, and that no change shall be made in such system without the consent in writing of this company;" that by virtue of this clause the defendant Confectionery Company was enabled to obtain insurance at a rate two-thirds less than it could have obtained it otherwise; but that the said Confectionery Company violated this provision of the policy by allowing the sprinkler system to become wholly ineffective, although from time to time it was warned that the said system was out of order and that by reason of such defective condition of the sprinkler system the insurance companies were greatly injured, in that they did not have the benefit of this protection against fire. It is alleged that this clause in the policies upon this subject was employed by both parties with a full understanding "that it was a statement and assumption of condition and undertaking on the part of the insured, relating to the risk and affecting its character and extent," and that this statement was both a warranty and a condition of the contract; that the companies did not know that there was a breach of this condition until after the fire occurred; that there was an association separate and apart from the insurance companies, whose business it was to make an inspection of different sprinkler systems installed in build-

ings over the country, and that such an inspection was made, on the 21st day of February, 1910, of the sprinkler system owned by the defendant Confectionery Company, and its defective condition shown, as above stated, and notification issued to the Confectionery Company, and again only a few months before the fire occurred, to the same effect.

The prayer of the bill was for an injunction against the bringing of the nine separate suits, to the end that all the suits might be tried in one in the chancery court.

The cross bill filed by the Globe Underwriters' Agency and the International Fire Insurance Company briefly recites the substance of the original bill, partly in the form of a recapitulation, and partly in the form of an original statement covering the same matters.

The only real difference between the two bills is to be found in the charges in the cross bill in respect of the appraisement. It goes into too much particularity upon this subject, and makes some additional charges.

It is alleged that the agreement for submission to the appraisers was drawn up, signed, and executed by all the insurers interested in the machinery and by the insured, under and by virtue of which one William Fay, of St. Louis, Mo., was appointed by the insured as its appraiser, and one Frederick W. Hardwick, of Louisville, Ky., was appointed by the insurers as their appraiser, and the appraisers appointed J. R. Andrews, of Nashville, Tenn., as umpire; that the agreement for submission was in strict accord with the several con-

tracts of insurance relating to appraisal; that is to say, it provided that the two appraisers should appraise and estimate the sound value of the loss and damage; that the appraisement was to be made for the sole purpose of fixing the amount of sound value and damage; that it should not waive and invalidate any of the rights of either party under their several contracts of insurance; that in making the appraisal the appraisers should estimate the actual cash cost of replacing or repairing the damaged or destroyed property, allowing proper deduction for depreciation; that the appraisers proceeded to act, and on the 26th day of July, 1910, made an award, estimating the loss and damage at $20,064; that this award was signed by William Fay, the appraiser for the insured, and J. R. Andrews, the umpire:

That the award on the machinery was improperly arrived at; that it was unfair and unjust to the insurers, and should be set aside, for the following reasons, to wit: The policies of insurance provided that the appraisers *together* should estimate and appraise the loss, and, failing to agree, should submit their differences to the umpire; that the appraisers did not *together* appraise or undertake to appraise the loss and damage to the property, but each acted independently of the other, and made no attempt whatever to agree upon any differences which existed between them; that each appraiser took a copy of the inventory furnished by the insured, and each appraiser separately noted on his respective inventory his estimate of the sound value and damage to the

property; that there was no discussion between the appraisers with reference to their respective estimates, and no attempt on their part to compare their figures in an effort to agree upon the amount of damage; that Mr. Fay, the appraiser for the insured, suggested to Mr. Hardwick, the appraiser for the insurers, that each appraiser should separately put down in figures or ciphers, on their respective sheets, just what damage was done to the respective articles of machinery; that this was done, and afterwards Mr. Fay repaired to his room, and there fixed upon the amount of sound value and damage, according to his estimate, had it typewritten, and the respective estimates of each appraiser were turned over to the umpire for his action; that the umpire made no personal examination of the property in the presence of the appraisers; that he was not present at the time that the appraisers made their several estimates or appraisements, and was not called upon to settle any differences between the two appraisers, save and except in the manner as above set out; that when the umpire presented his award to the appraisers to be signed, Mr. Hardwick requested him to discuss the matter in detail, which the umpire declined to do; that the award was then signed by the umpire and Mr. Fay, the appraiser for the insured:

That among the articles embraced in the property appraised by Messrs. Hardwick and Fay, there were 55,000 pounds of moulding starch; that this starch was on

the inventory handed to the appraisers by the insured; that whatever amount of moulding starch was in the fire was completely and wholly destroyed; that no invoices were furnished relative to this moulding starch; that with reference to it Mr. Harris, of the American Confectionery Company, was called in by the appraisers and questioned in regard to it; he stating that he was willing to make affidavit to the effect that 55,000 pounds of moulding starch, worth the amount stated in the inventory furnished the appraisers by the insured, were on hand at the time of the fire; that acting upon this statement the appraisers allowed the American Confectionery Company for 55,000 pounds of moulding starch at the figure put upon the inventory furnished the appraisers by the insured; that neither the insurers nor their representatives (other than Mr. Hardwick) was present at the time this information was furnished to the appraisers by Mr. Harris; that, this being an item of property totally destroyed, the insurers were entitled to notice from the appraisers as to the time and place when this matter would be considered, so that they might have an opportunity of putting before the appraisers such information as they might have or could obtain relative to it:

That there were other articles included in the appraisal which were totally destroyed, and with reference to which the appraisers necessarily had to act on information and evidence, and that in none of such cases were the insurers notified of the time and place when such

matters would be considered, though under the law they were entitled to such notice:

That the failure of the appraisers to act together in making the appraisment in itself operated to defeat the award, whether signed by one or both of the appraisers, inasmuch as said appraisal was not made pursuant to the agreement for submission to appraisal, and the policy provisions pertaining to the appraisal; likewise that the failure of the appraisers to give notice to the insurers of the time and place when they would consider articles totally destroyed operated to defeat the appraisal, or the award made thereunder:

That the appraiser for the insured, Mr. Fay, was biased in favor of the insured, and prejudiced against the insurers; that by reason of his bias and prejudice he was not a "disinterested" appraiser, as he was required to be, both under the law and under the contract and agreement for submission; that, because of not being a "disinterested" appraiser, the appraisal made by him was excessive, and the amount of sound value and damage fixed by him upon the various articles appraised did not truly and correctly represent the loss and damage:

That the act of the umpire in refusing to discuss the award with the appraisers for the insurers was an act arbitrary in itself, and wholly without warrant either in law or equity; that the failure of the umpire to personally examine the appraised articles in the presence of the appraisers, and to accompany them while making

their appraisal, necessarily prevented him from deter-
mining the relative merits and demerits of the estimates
of each appraisal; that his fixation of the award at
some place other than that where the appraised property
was located, and in the absence of the appraiser for the
insurers, was wholly in disregard of his duties as an
umpire.

It is further alleged that the amount of the award did
not truly and correctly represent the actual cash value
of the loss and damage to the articles submitted to ap-
praisal, but that the award in itself was so grossly ex-
cessive as to shock the conscience.

The demurrer filed to the original bill presents six-
teen grounds; but, so far as they are material, they may
all be embraced under the single proposition that the bill
does not state sufficient grounds for enjoining the con-
templated suits of law and embracing all within one
suit in equity.

The chancellor took this view, and on his own motion
dismissed both the original bill and cross bill, holding
that the chancery court had no jurisdiction under the
facts stated in either bill, but that the matters involved
were such as could be, and should be, entertained in a
court of law.

The exact question arising on the original bill, and
the cross bill, as to the jurisdiction of the court of
equity, arose in two cases decided by this court in 1908,
in both of which the decision was in favor of the juris-
diction of the court. *Georgia Home Insurance Co. et al*

v. *E. A. Beasley et al.*, MS., Jackson, April term, 1908, and *Globe & Rutgers Fire Insurance Co. et al.* v. *S. Trabue,* MS., Jackson, April term, 1908. In the last of these cases the court said:

"There is some contrariety of opinion in the authorities as to the circumstances under which a bill may be maintained in equity to enjoin actions at law on the ground of multiplicity of suits. It would be a useless consumption of time, in the present opinion, to undertake to reconcile the authorities. Suffice it to say that we have carefully considered the question, and we think the better rule is stated in the following cases: *Virginia-Carolina Chemical Co.* v. *Home Insurance Co. et al.*, 51 C. C. A., 22, 113 Fed., 1; Id. (C. C .),109 Fed., 681; *Tisdale* v. *Insurance Co.*, 84 Miss., 709 (36 South., 568); *Insurance Company* v. *Landau,* 56 N. J. Eq., 513, 39 Atl., 400; *Fuller* v. *Detroit F. & M. Insurance Company* (C. C.), 36 Fed., 469, 1 L. R. A., 801; *Garrison* v. *Insurance Co.*, 60 U. S., 312, 15 L. Ed., 656. Other cases are cited in opposition to this view;  .  .  .  but, without going into the particulars of these cases, we think it suffices to say that the cases first mentioned announce the better rule. As above stated, it is unnecessary, in the present case, to go into the conflict of the cases on this subject (see 16 Cyc., 64, 65, 66, and notes), since the rule for this State has been laid down in *Ducktown* v. *Fain,* 109 Tenn., 56 (70 S. W., 813), and, as stated in *Hale* v. *Allinson,* 188 U. S., 56, 77 (23 Sup. Ct., 244, 252, 47 L.

Ed., 380), in which an excellent discussion of the subject appears:

" 'Each case, if not brought directly within the principle of some preceding case, must, as we think, be decided upon its merits, and upon a survey of the real and substantial convenience of all parties, the adequacy of the real remedy, the situations of the different parties, the points to be contested, and the result which would follow if jurisdiction should be assumed or denied; these various matters being factors to be taken into consideration upon the question of equitable jurisdiction on this ground, and whether within reasonable and fair grounds the situation is calculated to be in truth one which will practically prevent a multiplicity of litigation, and will be an actual convenience to all parties, and will not unreasonably overlook or obstruct the material interests of any. The single fact that a multiplicity of suits may be prevented is not in all cases enough to sustain it. It might be that the exercise of equitable jurisdiction on this ground, while preventing a formal multiplicity of suits, would nevertheless he attended with much more and deeper inconvenience to the defendants than would be compensated for by the convenience of a single plaintiff; and where the case is not covered by any controlling precedent the inconvenience might constitute good ground for denying jurisdiction.' "

The principle copied from *Hale* v. *Allinson* has been the rule in this State for seventy years.

*Johnson* v. *Brown*, 2 Humph., 327, 328, 329, 37 Am.

Dec., 556 (April term, 1841): "Mr. Justice Story has justly remarked that, numerous as are the cases upon this subject, no principle can be extracted from them that can be safely adhered to as a general rule; but the courts must determine each case upon its own peculiar circumstances. While multiplicity of actions, on the one hand, ought to be avoided, we should be careful, on the other, to guard against that complication and confusion, in the investigation of rights and the application of remedies, arising from the attempt to blend in one suit distinct and incongruous claims and liabilities. The interest and liability of defendants may be separate, and yet they can be joined in the same suit. But then their liability must flow from the same *fountain,* their interests *radiate* from some *common* center, as if they have distinct portions of complainant's distributive share, or have purchased severally and each for himself, from the complainant's testator, separate portions of his trust property, and in such like cases. It is upon this principle, perhaps, that the judgment in the case of *Fellows* v. *Fellows,* 4 Cow. (N. Y.), 682 (15 Am. Dec., 412), can be maintained, if at all maintainable. In that case several persons, at distinct times and without confederation with each other, had fraudulently purchased separate portions of property of B, the debtor of A, and who had a judgment against B. It was held that a bill filed against all was not multifarious. B, the common and fraudulent vendor to all the defendants, was the debtor

to A, and constituted a common connecting link, a central point to all."

*Governor* v. *McEwen*, 5 Humph., 241, 263, 264 (December term, 1844) : "This doctrine of multifariousness, in each particular instance, peculiarly refers itself to the sound legal discretion of the court to be guided by the analogies of the decided cases, the principle of which, however, is the attainment of justice, by means the most convenient and least embarrassing."

*Bartee* v. *Tompkins*, 4 Sneed, 623, 635, 630 (December term, 1857) : "Was the bill as filed multifarious? It is well said by the supreme court of the United States in the case of *Gains* v. *Chew*, 2 How., 619 (11 L. Ed. 402) : 'As to what constitutes multifariousness it is impossible to lay down any general rule; every case must be governed by its own circumstances, and the court must exercise a sound discretion on the subject.' Neither the number of parties nor the intricacy of the claims on the one side or the other will render a bill multifarious. It is their disconnection or inconsistency, or the practical inconvenience of considering them together, that renders it improper that they should be embraced under a single bill. Whenever a series of transactions have a common root or origin, and are so connected in the manner in which they transpire as that it is impossible to tell in advance what bearing one may have upon another, or how respective parties may be charged in reference to each other, embracing them under one bill would not subject it to the charge of multifariousness. See Story's

Eq. Pl., sections 284-286. Where a debtor, having many creditors, makes a fraudulent conveyance of different portions of his property to different grantees, and the property is further disposed of to different persons, not innocent purchasers, the creditors may all join in a bill against all the fraudulent grantees and those who may claim under them. Story's Eq. Pl., section 286. Again says Mr. Story, in section 539, Eq. Pl., after stating that there is no inflexible rule: 'It is not very easy *a priori* to say exactly what is, or what ought to be, the true line regulating the course of pleading on this point.' 'In new cases, it is to be presumed that the court will be governed by those analogies which seem best founded in general convenience and will best promote the due administration of justice.' "

*Fogg* v. *Rogers,* 2 Cold., 290 (December term, 1865) : The third syllabus, which is fully sustained by the body of the opinion, reads: "No principle, in regard to multifariousness in bills of chancery, can be adhered to, as a general rule; but the courts must determine each case upon its own peculiar circumstances."

*Miller* v. *Harris,* 9 Baxt., 101 (April term, 1877) : "On a question of multifariousness, the court must look to the circumstances of each case, to avoid on the one hand multiplicity of suits, and on the other inconvenience and hardship to defendants, in being called upon to defend as to matters that have no connection, and to avoid complication and confusion of evidence."

All our other authorities are in line, viz.: *Bruton* v.

*Rutland,* 3 Humph., 435; *Ohio Life Insurance Co.* v. *Merchants' Insurance Co.,* 11 Humph., 1, 53 Am. Dec., 742; *Harrison* v. *Hallum,* 5 Cold., 525; *Rogers* v. *Simpson,* 10 Heisk., 655; *Cartmell* v. *McClaren,* 12 Heisk., 41; *Walker* v. *Day,* 8 Baxt., 77; *Woodward* v. *Hall,* 2 Tenn. Ch., 164; *Hughes* v. *Tennison,* 3 Tenn. Ch., 641; *Ducktown Sulphur, Copper & Iron Co.* v. *Fain,* 109 Tenn., 56, 70 S. W., 813.

In the cases last cited there are some illustrations which may be useful to enable us to thoroughly understand the position of our authorities upon the subject.

In *Bruton* v. *Rutland* it is said: "The bill in this case is clearly multifarious. (1) It sets up the complainant's equity against a portion of the defendants, and seeks to get a decree vesting their legal title in him. (2) It seeks to investigate the validity of a sale by the sheriff of the share of one of the heirs under whom complainant claims. (3) It seeks to investigate the question arising upon the forcible entry and detainer. (4) It asks for an account for rents and profits."

In *Ohio Life Insurance Co.* v. *Merchants' Insurance Co.,* 11 Humph., 1, 34, 35 (53 Am. Dec., 742): "In the last place, it is said the bill was multifarious. It makes the persons who compose the members of the corporation parties, and seeks to impose upon them a personal liability in their private capacity, and independent of the character, to the extent of the complainant's demand. It makes the same persons parties in their corporate capacity, and seeks to enforce against them a lia-

bility as corporators, to the extent of the capital stock of the company. It makes the corporation, as such, a party, and seeks to enforce against it a liability, not as upon the contract stated in the bill, but upon the ground of fraud. It makes the trustees in the deed of assignment parties, and, impeaching it for fraud, seeks to set aside the assignment and to subject those assets to the payment of complainant's claims. Now, the question is whether the various subjects and parties may all be united in the same record, as one suit. And we are clearly of the opinion that they cannot. If a bill 'seeks to enforce different demands against persons liable respectively, but not as connected with each other, it is clearly multifarious' (per Lord Eldon, in *Saxton* v. *Davis*, 18 Ves., 79) ; but if there be a common interest in the plaintiffs, and the defendants represent and are interested in all the different questions raised in the record, and the suit have a common object, it is not to be considered as multifarious. *Campbell* v. *Macky*, 1 Mylne & Craig, 603. The interest alluded to must not be remote and consequential, but such as will be affected and concluded by the decree. Story's Eq. Pl., sections 140, 226."

In *Harrison* v. *Hallum*, 5 Cold., 525, 528, 529: "The objection that the bill as to these defendants is multifarious is not well taken. It is altogether proper, where there are several judgment debtors, and one of them has made a fraudulent conveyance to one grantee, and another has made a fraudulent conveyance to another

grantee, and another has made a like conveyance to another grantee, to unite all these debtors and their several fraudulent grantees in one common bill. The one judgment and the one object of the bill, the satisfaction of the judgment, and the common purpose to defraud the creditor, constitute a quite sufficient link to take the bill out of the objection of multifariousness."

*Rogers* v. *Simpson*, 10 Heisk., 655, 657: "The ground of multifariousness is the only one we need notice. It is that one of the complainants seeks to enforce a private debt, when the general object of the bill is for partition, or sale for distribution among the heirs. This objection was unquestionably well taken. The claim for an enforcement of his private debt against John Rogers' interest in the estate, as one of the heirs of Jeremiah Rogers, had no connection whatever with the right of the heirs to have a partition of the estate, and could not properly be joined with such claim for partition."

*Cartmell* v. *McClaren*, 12 Heisk., 41, 42, 43: The bill in this case was filed in chancery court to enjoin the collection of several judgments rendered against complainants as sureties of one Clark. The bill alleged that these judgments, which were in favor of different persons, were, as rendered by the circuit court, against Clark only, the judge refusing to give judgment against the sureties, but that after the adjournment of the term the entries were fraudulently interlined, so as to convert them into judgments against the complainants also. It was alleged that there was a fund under the control of

the sheriff which should be applied to these judgments. Two grounds of demurrer were relied upon. The court said: "It is said that the bill is multifarious, containing distinct causes of complaint against distinct parties without community of interest. But for the allegation that there is in the hands of the sheriff a fund applicable to the several judgments, this ground of demurrer would be well taken; but the bill shows that a negro was levied on for these debts, and that a fund arose from his hire, under the direction of the court, which should be applied towards their satisfaction, though it does not appear in what proportions, nor even what is the amount of the fund. But as this amount, whatever it be, should be credited on the judgments, the complainants might well unite in a bill to enforce this object."

*Walker* v. *Day*, 8 Baxt., 77-80: The object of the bill was to set aside sales of real estate under a decree of the chancery court; the bill assuming that under the facts relied on the sale was absolutely void. There was a demurrer for multifariousness. The court said upon this subject: "The demurrer for multifariousness is not well taken. The sales of the several lots were the result of a single proceeding. The parties, by their purchases, made themselves parties to that proceeding, and derived whatever rights or titles they had therefrom. It was the title and property of Walker sought to be reached, and the claims of right of the purchasers came from that common source through the judicial sale. The decree attacked by this bill, and through which the defendants

are compelled to claim, is the single fountain; and, if it fail, the claims flowing from it must also fail."

*Woodward* v. *Hall*, 2 Tenn. Ch., 164, 166, 167: The bill in this case was filed by the executor of one Allen to recover for services performed by his testator in securing the share of certain heirs in the estate of one John L. Harris, who died leaving a large amount of property in the States of Louisiana, Mississippi, and Virginia. The contract stated in the bill was that complainant's testator was first employed by his wife, Mary C. Allen, and by John Vining and William Vining, which three defendants had a common interest as the children of a deceased sister of Harris. The other two defendants were themselves sisters of Harris, and employed John Dillard to look to their interest. At the death of John Dillard in 1865, the bill alleged that all of said parties, including the defendants Charlotte Hall and Elizabeth Dillard, employed the testator to act for them. "It is obvious, therefore," said the court, "that there was at first a contract made with complainant's testator by only three of the defendants, and that, conceding for the moment that the contracts were joint, and not independent, the other two defendants were not parties to the joint contract until after Dillard's death in 1865. The demurrer, then, raises the question whether the complainant can join in one and the same bill a cause of action against all of the defendants and a cause of action against only a part of them; the causes of action being, however, in relation to the same estate, in which the several sets of defendants

had separate, but undivided, interests. In this view the objection is to the uniting in the same bill of several matters of a distinct nature against several defendants. But this objection, it is well settled, must be confined to cases where the case of each particular defendant is entirely distinct and separate in its subject-matter from that of the other defendants; for the case against one defendant may be so entire as to be incapable of being prosecuted in several suits, and yet some other defendant may be a necessary party to some portion only of the case stated. In the latter case the objection of multifariousness cannot be allowed to prevail. Story's Eq. Pl., section 271, a. 'So,' continues the author, 'it is not indispensable that all the parties should have an interest in all the matters contained in the bill. It will be sufficient if each party has an interest in some matters in the suit, and they are connected with the others.' Id., and cases cited. And upon this general principle it has been held by our own supreme court that a bill is not multifarious where the interests and liability of the defendants are separate, but grow out of, or relate to, a common subject-matter."

*Hughes* v. *Tennison et al.,* 3 Tenn. Ch., 641-643: "The other defendants move to dismiss the bill for multifariousness and the misjoinder of parties. But the motion is clearly not well taken. 'The interest and liability of defendants may be separate, and yet,' as said by our supreme court, 'they can be joined in the same suit,' provided their liability flows from the same fountain, and

their interests radiate from some common center. *John-son* v. *Brown*, 2 Humph., 328 (37 Am. Dec., 556). And the authorities all recognize the case before us as falling within the rule where a debtor conveys, at different times and independently, distinct portions of his property to several persons, in fraud of the rights of his creditors."

*Ducktown Copper, Sulphur & Iron Co.* v. *Fain,* supra: This was a case in which the copper company had been sued by numerous persons for a tort committed by killing trees and vegetation with copper smoke. It sought to unite all of these suits into one. The case of *Tribette* v. *Railroad Co.,* 70 Miss., 182, 12 South., 32, 19 L. R. A., 660, 35 Am. St. Rep., 642, was referred to and relied on. In that case it appeared that a number of different owners of property destroyed by fire from sparks emitted by an engine of the company sued separately in the circuit court to recover damages for their respective losses by said fire, alleged to have resulted from the negligence of the defendant. The company filed a bill in equity seeking to enjoin the prosecution of the suits upon the ground that they all grew out of the same occurrence, and depended for their solution upon the same questions of fact and law, and to prevent a multiplicity of suits and the harassment and vexation consequent thereon. The decision in that case was approved, wherein it was held that mere community of interest "in the questions of law and fact involved in the general controversy, or in the kind and form of relief demanded and

obtained by or against each individual member of a numerous body," would not be ground for the interposition of chancery to settle in one suit the several controversies; that the recvery of damages for a tort does not pertain to courts of chancery, which are accustomed to decree damages only in a very limited class of cases, or under peculiar circumstances, or as incident to some other relief; that the sound doctrine is that, "in order to warrant a bill to prevent multiplicity of suits, there must be some recognized ground of equitable cognizance, or some community of interest in the subject-matter of controversy, or a common right or title involved, or the parties must have some common purpose in pursuit of a common adversary, where each may resort to equity in order to be joined in one suit; and it is not enough that 'there is a community of interest merely in the question of law or fact involved.' "

Referring to the question which the supreme court of Mississippi had under consideration in *Tribette* v. *Railroad Company*, and which this court had in *Ducktown, etc., Company* v. *Fain*, supra, as to whether there could be a bill in equity uniting several actions of tort arising out of a single act of misconduct, Stiness, C. J., said, in *Whipple* v. *Guile*: "The defendants call our attention to a question put by Jessel, M. R., in *Appleton* v. *Chapel Co.*, 45 L. J. Ch. Rep. (N. S.), 276, in illustration of 'the real essence of the difficulty with a bill like that in the case at bar.' The question was: 'If twenty people were hurt in a railway collision, would that be a common in-

jury? And could they all join as plaintiffs in one action for compensation?" Of course they could not, because the extent of the injury would be different in each case, and require a separate assessment and judgment. But, if they were creditors of the railroad company, they could join in a bill for a receiver. The controlling question is not of diversity of interest but of unity in remedy." 22 R. I., 578, 48 Atl., 936, 89 Am. St. Rep., 855.

The language we have quoted from *Ducktown, etc., Co.* v. *Fain* was reproduced by this court in the above-mentioned case of *Georgia Home Insurance Co. et al.* v. *E. A. Beasley* (April term, 1908), a case similar in its facts to the case now before us, and it was held to cover the facts involved in that case, and to justify the filing of the bill in equity, which had been filed therein, to enjoin the bringing of the several suits, and to compel their trial together in one comprehensive suit in equity.

It is insisted by counsel for the defendant in the present case that the two cases decided by this court in 1908 are not well founded in law, because the court referred, among other authorities, to the case of *Virginia-Carolina Chemical Co.* v. *Home Insurance Co. et al.*, supra, and this latter case was doubted subsequently in the case of *Rochester German Insurance Co.* v. *Schmidt*, 175 Fed., 720, 99 C. C. A., 296, which was an opinion delivered in the circuit court of appeals, also in the Fourth circuit, by Pritchard, circuit judge. So far as the matter of pure authority is concerned, of course, the later federal

case very much weakens the former; but we prefer the reasoning in the former case. However, setting aside both of these federal cases, the authority is ample in decisions of our own court. Moreover, the lower federal courts are not in accord. In *Wyman* v. *Bowman,* in the circuit court of appeals for the Eighth circuit, 127 Fed., 257, 263, 264, 62 C. C. A., 189, 195, 196, it is said:

"This court has repeatedly held—and that holding is sustained by the great weight of authority—that a bill in equity against several defendants, separately liable either at law or in equity, may be maintained, in order to avoid a multiplicity of actions at law or of suits in equity, whenever there is a common and decisive point of litigation between the complainants and the defendants, the complainant has no remedy at law as prompt, practical, and efficient to attain the ends of justice as the suit in equity, and the convenience of the complainant in pursuing the single suit in equity is not overcome by the deeper inconvenience of such a course to the defendants. (Authorities.) In the suit under consideration, every point of litigation between complainant and the defendants is common to all the latter. One of them has demurred to the bill, and eight have joined in a common answer. Their alleged liability is based on their signatures to the same agreement of subscription. They all defend on the ground that their subscriptions were conditional, that their contracts were rescinded, that 41.625 per cent. of their subscriptions was paid by Johnson and his associates, that the questions presented in

this suit are *res adjudicata,* that the complainant has no legal capacity to maintain the suit, and that the court below had no jurisdiction in equity. The same facts, proved by the same evidence, condition the defenses of each of the defendants, and the same questions of law are presented by each of them for our determination. Why does not this suit prevent a multiplicity of actions at law, and give to the complainant a more efficient and practical remedy, without inconvenience to the defendants, than nine separate actions at law could give? The remedy which will preclude the maintenance of a suit in equity must be 'plain and adequate, or, in other words, as practical and efficient to the ends of justice and its prompt administration as the remedy in equity.' (Authorities.) Would nine actions at law, in which the same questions of law and fact would be tried nine times upon the production and reproduction of the same evidence before nine different parties, be as efficient and prompt or as practical a means to determine the questions here at issue, and to attain the ends of justice, as this single suit in equity? The question is its own answer. Is there any deeper inconvenience to the defendants than would be compensated for by the convenience of the plaintiff in pursuing this remedy? None is proved. None can be conceived. Indeed, the single suit in equity entails less expense, less labor, and less trouble upon the defendants, by as much as it is less expensive and troublesome to try a single suit in equity than it is

to try nine actions at law, involving the same controversies, conditioned by the same evidence."

In *Risely* v. *City of Utica* (D. C.), 173 Fed., 502, 506, 507, it was held that a bill to enjoin the collection of illegal taxes is not multifarious because it includes taxes levied for different purposes, where all are subject to the same infirmity, and the bill has a single purpose, which is to have all the taxes adjudged illegal.

In *Snelling* v. *Richard* (C. C.), 166 Fed., 635, 636, it was held in a suit by stockholders against directors, where the only relief prayed was an injunction against issuing any of the company's new stock without first giving complainants reasonable opportunity to take their proportionate share, and against voting, or permitting to vote, stock that might have been issued in violation of their rights, complainants had a common interest in such relief, and could properly be joined in a single bill.

In *Bracken* v. *Rosenthal* (C. C.), 151 Fed., 136-138, it was held that a bill for infringement of the copyrights of different pieces of sculpture would not be held demurrable for multifariousness, where the parties and the general methods of alleged infringement are the same, and especially where it appears from the bill that all of the acts of infringement were committed pursuant to a common purpose by the defendants.

In *Pennsylvania Co.* v. *Bay* (C. C.), 150 Fed., 770, 773, 774, it was held that a bill by a railroad company for an injunction to restrain brokers from dealing in special non-transferable tickets issued by it was not

multifarious because a number of defendants were join-
ed who had no connection with each other,   where   all
were engaged in the same business, and were alike inter-
ested in the questions at issue, and   a   joinder   would
save a multiplicity of suits.

In *Smyth* v. *Ames,* 169 U. S., 466, 517, 518, 18 Sup.
Ct., 418, 42 L. Ed., 819, it appeared that the State of
Nebraska had passed a law providing for the fixing of
certain railroad rates.   The statute expressly provided
that, if those rates were deemed by the railroad compa-
nies unjust or unreasonable, they should have a right of
action in the supreme court of the State for the purpose
of obtaining an increase of rates; but in the meantime
they were subject to heavy penalties for any violation of
the law.   Under the operation of the law the companies
might be subjected to various suits for penalties, in case
of a violation of its provisions.   The several railroads
joined in one bill, filed on the equity side of the United
States court, to enjoin action under this   law,   on   the
ground   of   its   unconstitutionality.   Objection was
made to the jurisdiction of the   equity   court   on
the   ground   that   the railroads   had   a   complete
remedy at law   expressly   provided   for   by   statute.
The court said there was a remedy at law, but that it
was not efficacious, and therefore did not   take   away
from the court of equity a right to entertain the bill, be-
cause that jurisdiction was dependent, not alone on
whether there was a remedy at law, but whether there
was a remedy afforded relief   as   comprehensive   and

efficacious as that afforded in equity; and in view of the fact that the whole matter could be determined by one comprehensive suit in equity, while a multiplicity of suits at law would be required, it was held that the bill was maintainable.

In *Bitterman* v. *L. & N. R. R. Co.*, 207 U. S., 205, 226, 28 Sup. Ct., 91, 52 L. Ed., 171, it was held that the objection of multifariousness, based on misjoinder of parties and causes of action, would not lie against a bill to enjoin ticket brokers from dealing in nontransferable reduced rate excursion tickets, where the acts complained of as to each defendant were of a like character, and their operation and effect upon the rights of the complaining carrier were identical; the relief sought against each defendant being the same, and the defenses which might be interposed being common to each defendant, and involving like legal questions.

In *State* v. *Knife Falls Boom Corporation*, 96 Minn., 194, 199, 104 N. W., 817, it was held that a bill in equity is not multifarious, where one general right only is claimed by it, though defendants have only separate interests in distinct questions which arise out of such a right, and it is not necessary that all the defendants should be equally affected.

In *Hanson* v. *Neal*, 215 Mo., 256, 271, 114 S. W., 1073, wherein it appeared that defendants, pursuant to a common understanding, had, between them, received the deeds to land sold at a trust deed sale, it was held a bill to set aside the deeds was not multifarious for joining

them as defendants, where the causes of action against them depended on the same evidence.

In *Blumer* v. *Ulmer* (Miss.), 44 South., 161, it was held that equity had jurisdiction of a suit by several depositors of an insolvent bank against the directors for deceit in inducing complainants to make deposits when the bank was insolvent, in order to prevent a multiplicity of suits, though the cause of action of each depositor, if asserted alone, would properly be at law.

In *Tisdale* v. *Insurance Co.*, 84 Miss., 709, 36 South., 568, the court said: "The appellant brought three separate suits, one against each company," in a court of law. "The property insured was the same, and the principles of law governing the three cases were the same, and the facts were substantially identical. The bill further alleges incorrect and false bookkeeping, in this: That he did not keep such an inventory and such a set of books as the policies required, and that they did not show the truth about the purchases and shipments in the business, and were not a complete record of the business transacted by the appellant. The bill was demurred to, and the demurrer overruled; hence this appeal. We think equitable jurisdiction is maintainable on the ground of the prevention of a multiplicity of suits at law, as well as upon the inadequacy of the remedy at law. The very same principles of law and the very same facts determine each case. Besides, it is important to note that there can be but one true fixation of the actual amount of loss, and yet each jury might put it at a different sum."

In *American Central Insurance Co.* v. *Landau,* supra, it appearel that thirty-two insurers under twelve separate policies filed a bill to enjoin separate suits against them, and alleged that some of their policies covered insured's property in one of three buildings, and some in another, and some in all of the buildings; that each policy contained a provision that the insurer should not be held liable for a greater proportion of any loss than the amount insured therein should bear to the whole insurance; that insurers had jointly tendered the agreegate amount of an award that had been made under insured's agreement with them jointly to arbitrate according to the provisions of each policy. Held, such bill was not subject to demurrer for multifariousness. 56 N. J. Eq., 513, and see numerous cases cited on pages 522 and 523, 39 Atl., 400.

In *Scofield* v. *City of Lansing,* infra, the case of *Kensington* v. *White,* 3 Price, 164, is referred to, wherein it appeared that seventy-two different underwriters, upon different policies of insurance, upon which complainants had been severally sued at law for their respective subscriptions, joined in one bill, the object of which was to establish a defense which was common to all. The bill was sustained as not multifarious.

*Fegelson* v. *Niagara Fire Insurance Co.,* 94 Minn., 486, 103 N. W., 495, was a case wherein the insured brought a single joint action against six fire insurance companies, for the purpose of holding them liable on six separate policies of insurance, covering his stock of merchandise,

furniture, and fixtures. The complainant alleged that a
fire had occured, whereby the insured had sustained loss,
and that each of the companies denied liability. It also
alleged that the amount of liability of each defendant
for such loss depended upon the liability of the other de-
fendants, and that to adjust their respective liabilities
it was necessary at the same time to determine the liabil-
ity of each, and for this reason, and to prevent a multi-
plicity of suits, it was necessary to join all of the defend-
ants in one action. The prayer of the complaint was that
the court would ascertain the facts and the amount of
the plaintiff's loss, and the proportionate share thereof
of each defendant, and award judgment accordingly.
There was a demurrer, making objection that the several
causes of action were improperly joined. Each of the
policies contained a rule or provision for apportioning
liability between the several companies in substance the
same as that which is embraced in the policies involved
in the present controversy, except that only valid insur-
ance was to be considered. The court sustained the com-
plaint, assigning as grounds of its judgment: That in
order to determine the amount which the plaintiff was
entitled to recover against each of the defendants, it was
necessary to determine conclusively against each two
questions, in which there was a community of interest
among them all, namely, the amount of the plaintiff's
loss, and the amount of his valid insurance; that if the
plaintiff could not bring all of the defendants into one
action, and have these questions settled as a basis for

accurately and conclusively determining the *pro rata* liability of each insurer for the loss, he was without any certain, speedy, adequate, and convenient remedy in the premises, but would be remitted to the uncertain remedy of a multiplicity of suits. "If a separate action against each defendant," continued the court, "be his only remedy, he must bring six actions, instead of one, in each of which the same evidence on the two essential questions must be gone over, and the law applicable thereto determined, with the not improbable result that the amount of his loss and the amount of his valid insurance will be fixed at a different amount in each case. Such a remedy is neither certain nor adequate depending, as it does, upon the aggregate result of a multiplicity of vexatious actions."

In general accord with all the cases cited, see, also, the following: *Baumgartner* v. *Bradt,* 207 Ill., 345, 348, 349, 350, 69 N. E., 912; *Charles Simon's Sons Co.* v. *Md. Telephone & Telegraph Co.,* 99 Md., 141, 180, 57 Atl., 193, 63 L. R. A., 727; *Scofield* v. *City of Lansing,* 17 Mich., 159, 161-163, 54 N. W., 634; *Torrent* v. *Hamilton,* 95 Mich., 159, 161-163, 54 N. W., 634; *Blankenburg* v. *Black,* 200 Pa., 629, 50 Atl., 198; *Whipple* v. *Guile,* 22 R. I., 576, 48 Atl., 935, 84 Am. St. Rep., 855; *Brown* v. *Tilley,* 25 R. I., 579, 57 Atl., 380; *Almond* v. *Wilson,* 75 Va., 613, 623, 624; *Johnson* v. *Black,* 103 Va., 477, 49 S. E., 633, 68 L. R. A., 264, 106 Am. St. Rep., 890; *Fidelity & Deposit Co. of Md.* v. *Fidelity Trust Co.* (C. C.), 143 Fed., 152, 156, 157; *Illinois Central R. R. Co.* v. *Caffrey,* 128 Fed., 770, 774, 775; *L. & N. R. R. Co.* v. *Smith,* 128 Fed., 1, 63 C. C.

A., 1; *Curran* v. *Campion*, 85 Fed., 67, 29 C. C. A., 26; *Kelley* v. *Boettcher*, 85 Fed., 55, 64, 29 C. C. A., 14.

Numerous other cases could be added, but these will suffice. They present various interesting illustrations of the subject.

In the foregoing citations we have referred to authorities upon misjoinder of parties complainant and parties defendant, and upon cases on the subject of multifariousness in general; all being questions closely akin, and throwing light upon the subject of inquiry.

Of course, the application of the doctrine to insurance litigation presents only one very small aspect of a very broad, general question. It would be preposterous to establish a rule, in this branch of the law, applicable to such contracts alone.

Now, bringing this class of cases under the general principle, it is perceived at a glance that the five contracts of insurance upon which the nine suits complained of might be brought, all cover property which was destroyed or injured by the fire which occurred at the plant of the Confectionery Company. The liability under each policy springs from that loss. Each company is interested in the ascertainment of the loss, and in fixing the amount thereof, since each is liable for the loss only in the proportion which the amount of each policy bears to the whole amount of insurance. There could be brought at law certainly five suits, one on each policy. Why should there be five different valuations of five separate juries on the same evidence, when one trial before the

court of chancery, or in that court before a jury, would settle the question with very much less labor and expense to the parties, and with very much less expenditure of the public time and public money in affording the parties the facilities of a trial?  In addition to this, it is to be noted that there are the several other questions which are common to the parties, and which must be settled by the same evidence, or substantially the same evidence, all of which are suggested in the bill, viz.:  First, concerning the misrepresentations which are alleged to have been made for the purpose of procuring the policies; secondly, the keeping of explosives; thirdly, the failure to separate the damaged and undamaged personal property, and to put the property in the best possible order, and the failure to make an inventory thereof; fourthly, concerning the misconduct of the insured in respect of the sprinkler system.  While the existence of these questions alone, although common to all the parties, might not justify the enjoining of the suits at law, and trying them all in the court of equity (although we do not decide this question one way or the other), yet when they are found in connection with the question first mentioned they become very important, under the rule that a court, for the purpose of preventing a multiplicity of suits, will act upon the facts of each case, with a view to the convenience of the parties, and to affording complete and adequate relief.

··The fact that the five separate suits might be entertained at law, and five separate valuations had of the property lost, and that the whole amount of insurance·

Insurance Cos. v. Confectionery Co.

might be ascertained in each such case, and the jury instructed to return against each defendant company in such separate suit only such amount of the loss as the amount of the policy sued on would bear to the whole amount of the insurance, is no answer to the relief sought in the bill; since the rule whereby a court of equity may enjoin such numerous suits at law is not based on the postulate that the court of law is without jurisdiction, but simply on the ground that a multiplicity of suits would be thereby prevented, and that in such prevention both the public and private interest would be subserved.

Nor is it any answer to say that, if the suits at law should all be brought in one court of law, they could all be consolidated and heard together by order of the judge of such court. This presupposes that they would all be so brought, and likewise that they would all remain in court, when in truth there would be nothing to prevent the dismissal of any of the cases on voluntary motion of the plaintiff therein, and their subsequent renewal at such times and in such ways as would effectually prevent consolidation. Relief in equity cannot be denied on such grounds. Moreover, consolidated cases, involving numerous and diverse questions affecting different branches of a composite controversy, cannot be so well handled in trials at law as in equity, owing to the difference in the methods of practice in the two courts, and particularly to the difference in the functions of the jury in the respective tribunals.

In addition to the foregoing questions common to the various insurance companies, the question made in the

cross bill, wherein the award is attacked for fraud, is a very important one. The jurisdiction of a court of equity to set aside an award for fraud is clear. The relief in such a case is in equity, and not at law. 1 Clements on Fire Insurance, p. 183; Cooley's Briefs on Insurance, vol. 4, 3654; *Robertson* v. *Insurance Co.,* 68 Fed., 173, 175; *Philadelphia Fire Association* v. *Allesina,* 45 Or., 154, 158, 77 Pac., 123. The court of chancery obtaining jurisdiction on this ground, would proceed to dispose of the whole case, even if the other matters referred to were not involved.

We note that one of the policies is on machinery alone, six of them on machinery and stock, and one on stock alone, and one insured office furniture along with other property. This, however, will not alter the application of the principle, since all the property was destroyed in the same fire, and the same common questions remain as above indicated. While there is one policy upon the machinery alone, and one upon the stock alone, the same facts of loss govern, and, besides, it is not necessary that each of the parties should be interested in all of the questions. This is shown by the authorities above referred to.

It results that the judgment of the court of civil appeals, reversing the decree of the chancellor, must be affirmed, and the cause remanded for further proceedings.